No. 2315.—PELLEMAN M. WILLIAMS *v.* THE CITY OF NEW ORLEANS.

The act of the General Assembly which created a Metropolitan Police District for the city of New Orleans and took away from the city authorities the management of the police force and vested it in a Board of Metropolitan Police, did not repeal or modify the statute of 1855, re-enacted in 1869, which makes the city liable for property destroyed by a mob or a riotous assembly within the limits of the corporation. The city is, therefore, liable, under this act, for the damage done to property within the corporation, whether the owner of such property be a resident of the city or an absentee.

APPEAL from the Fifth District Court, parish of Orleans. *Leaumont*, J. *Hays & New*, for plaintiff and appellee. *George S. Lacey*, for defendant and appellant.

TALIAFERRO, J. The plaintiff in this case seeks to render the city of New Orleans liable to him in the sum of $1744, the amount of losses he alleges he sustained from the destruction and carrying off of property by a mob of disorderly and riotous persons, who, by violence, entered his dwelling on the nights of the twenty-sixth and twenty-seventh of October, 1863.

The answer is a general denial. The plaintiff had judgment for twelve hundred dollars, with legal interest from judicial demand. The defendant appealed.

The claim of the plaintiff is predicated upon the statute of 1855, re-enacted in 1869, which declares that "the different municipal corporations shall be liable for the damages done to property by mobs or

riotous assemblages in their respective limits." Revised Statutes of 1870, p. 485, § 2453.

The principal ground of defense seems to be that by the statute of fourteenth of September, 1868, entitled "An act to establish a Metropolitan Police District, and to provide for the government thereof," the city of New Orleans was divested of the power and means to maintain order and suppress riots, mobs and insurrections. This defense seems more specious than solid. The liability of municipal corporations for losses occasioned by riotous conduct within their limits, is not made to depend upon the condition of having police forces. The underlying principle on which laws of the character of the statute of 1855, re-enacted in 1869, already referred to, are founded is, that it is the interest of every one that property should be protected, and that it is for the general good that such laws should exist. When the importance of social order and the security of person and property resulting from it are impressed upon the public mind by the strong influence of pecuniary responsibility, a sharper vigilance is excited and a more efficient action aroused in regard to the prevention and suppression of riotous assemblages, by which, in large cities especially, property is so often damaged and destroyed. This usage, it appears, is of ancient origin. It prevailed among the Franks and the ancient Germans, and was adopted at a later day in other countries from nations of German descent. In England, in the districts called Hundreds, from having formerly contained each one hundred families, it was introduced at a remote period. In many cases where an offense is committed within the Hundred, the inhabitants are civilly responsible to the party injured. In other States of the Union, laws have been passed making cities or counties responsible for the destruction of property by a mob. Such a law is in force in the State of New York, and we are referred to numerous decisions in suits instituted under its provisions. Looking to the reason for the establishment of such laws and turning to our statute on the subject, we find its terms clear, positive and unambiguous. It declares that "the different municipal corporations of this State shall be liable for the damages done to property by mobs or riotous assemblages in their respective limits." The language is plain. There are no words of limitation or qualification. We conclude, therefore, that the establishment of the Metropolitan Police force does not release the corporation of New Orleans from the provisions of this law. The equitable considerations invoked by the defense seem to possess little weight. The Metropolitan Police, although not under the control of the city authorities, is nevertheless established for the benefit of the city of New Orleans and the other places within the Metropolitan District. Section forty-one of the act establishing the Metropolitan District enumerates numerous

duties required to be performed by the Metropolitan Police. Among these, it is required, at all times of day and night, "to especially preserve the public peace, prevent crime, detect and arrest offenders, suppress mobs, riots and insurrections, disperse unlawful and dangerous assemblages," etc.

Section fifty-one provides "that the Board of Commissioners shall, at all times, cause the ordinances of the cities of New Orleans, Jefferson City and Carrollton, and of the towns of Algiers and Gretna, and the ordinances of the parishes of Orleans, Jefferson and St. Bernard, not in conflict with the provisions of this act, to be properly enforced; and it shall be the duty of the said board, at all times, whenever consistent with the rules and regulations of the board and with the requirements of this act, to furnish all information desired by the Mayors, Common Council and other authorities of said cities and towns."

Here, then, is a competent force for all the various purposes for which it was established; a force which is to carry into execution the ordinances of the city of New Orleans and to co-operate with the Mayor and Common Council in regard to police matters concerning the interests of the city. For all that appears the duties with which this police force is charged, are performed as efficiently as if it were under the control of the Mayor and Common Council. The organization of the Metropolitan Police force does not disarm the municipal authorities of the power to use means to prevent and suppress mobs and riotous assemblages. It is provided by section twenty-six of the act of 1856, No. 164, approved March 20, and re-enacted by the act "To extend the limits of the parish of Orleans," etc., approved March 16, 1870, "That the Mayor shall be the chief executive officer of the city. He shall keep his office in the City Hall; he shall affix the seal of the corporation to all its official acts; he shall see that the laws and ordinances be properly and faithfully executed; he shall be *ex officio* justice and conservator of the peace." Acts of 1870, p. 32.

The chief executive officer of the city being constituted a justice of the peace *ex officio* and a conservator of the peace, he is necessarily clothed with all the powers incident to and conferred by law upon justices of the peace. What is there to prevent him, if need be, from calling upon the proper authorities,and resorting to the means within his power as a conservator of the peace to prevent or suppress mobs or riotous assemblages?

We think the plaintiff's case is fairly made out and that he is under the law entitled to recover.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs.

HOWELL, J., *concurring.* I do not consider it necessary, in this suit,

to express an opinion on the question of the powers and duties, respectively, of the city government and the Metropolitan Police in regard to the suppression of riots, as the law on which this action is based, is clear and unambiguous, is not repealed or unconstitutional and is not made dependent for its operation on the existence or non-existence of a police force, but upon the aggregate responsibility of the inhabitants, whose interest it is or should be to maintain good order, and it seems to me clear that if public sentiment is opposed to mobs, no mobs of any extent will be apt to occur.

On this ground I concur.

Howe, J. I concur on the grounds stated by Mr. Justice Howell.