## THE CITY OF CHICAGO

### v.

## THE MANHATTAN CEMENT COMPANY.

*Opinion filed February 17, 1899.*

1. CONSTITUTIONAL LAW—*Mob law of 1887 is constitutional.* The Mob law of 1887 (Laws of 1887, p. 237,) is a valid police enactment, and is not violative of sections 9, 10 and 12 of article 9 of the constitution, nor of the separate section prohibiting cities or counties from making donations to private corporations.

2. SAME—*Mob law of 1887 does not create a debt against cities or counties.* The Mob law of 1887 does not create a debt against cities or counties, but merely gives the owner of property destroyed by mobs a right of recovery upon proving all the facts prescribed by the act as necessary to fix a liability upon the city or county.

3. SAME—*city's financial condition has no bearing upon constitutionality of Mob law.* The fact that a city is already indebted beyond or up to the constitutional limit has no bearing upon the constitutionality of the Mob law of 1887, as that fact could only be considered, if at all, upon a proceeding to collect the judgment.

4. SAME—*wisdom of law not considered in determining its constitutionality.* Neither the wisdom of a law nor the hardships which it may impose upon municipalities without fault or neglect of duty upon their part are matters for consideration in passing upon the constitutionality of the act.

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

CHARLES S. THORNTON, Corporation Counsel, and THOMAS J. SUTHERLAND, for appellant:

The constitution of 1870 prohibits any legislation by the General Assembly in any way tending, directly or indirectly, to promote or create increased indebtedness on the part of the municipalities, in any manner or for any purpose, and the special provision against donations prevents any increase of indebtedness of cities. *People* v. *Wall,* 88 Ill. 78; Const. art. 9, secs. 9, 10, 12; Black on Const. Law, 66; Cooley's Const. Lim. 58, 59, 65; 1 Story's Com. on Const. 392, note.

The legislature is prohibited by the constitution from enacting any law which shall, in and of itself, provide or create a present debt, or put into existence or motion any condition of affairs which will render it possible or probable that a municipal debt may thereby be created, such a law being in contravention both of the terms and spirit of the constitution. *Lovingston* v. *Wider*, 53 Ill. 305; *Updike* v. *Wright*, 81 id. 54; *Springfield* v. *Edwards*, 84 id. 632; *Harris* v. *Supervisors*, 105 id. 540; *Smith* v. *McDowell*, 148 id. 62; *People* v. *Thompson*, 155 id. 470; *Chicago* v. *Shober*, 6 Ill. App. 562; *People* v. *Hill*, 163 Ill. 191; *Castner* v. *Walrod*, 83 id. 178; *Beardstown* v. *Virginia*, 76 id. 40; Black on Interp. of Laws, 15, 48-56; Cooley's Const. Lim. (6th ed.) 87, 204, *et seq.; Cornell* v. *People*, 107 Ill. 382.

The Riot act of June 15, 1887, under which the present action was brought, is in direct conflict with the constitution, both in its letter and spirit, and consequently void, and no just ground of recovery by the plaintiff exists. It provides by its terms a condition and liability not otherwise existing, and renders possible the accomplishment of an increased municipal indebtedness, which it was the purpose and spirit of the constitution to prevent.

The statute lays the basis for the debt, and thus provides for it upon a contingency named, and renders that possible which otherwise could not exist, and therefore purports to produce the debt which the constitution has prohibited. *In re Pennsylvania Hall,* 5 Pa. St. 204; *Fuller* v. *Heath,* 89 Ill. 307; *Prince* v. *Quincy,* 105 id. 143 and 217; *Chicago* v. *Building Ass.* 102 id. 396; *McCord* v. *Pike,* 121 id. 290; *Griswold* v. *East St. Louis,* 47 Ill. App. 483; *Sleight* v. *People,* 74 Ill. 47; *Updike* v. *Wright,* 81 id. 49.

GEORGE WILLARD, (J. J. BROOKS, and C. V. GWIN, of counsel,) for appellee:

Legislative acts having the same purport as the one in question, and under constitutions similar to our own, have been held valid in several of the States. *Underhill*

v. *Manchester*, 45 N. H. 214; *Chadbourn* v. *New Castle*, 48 id. 196; *Darlington* v. *Mayor*, 31 N. Y. 164; *Brigham* v. *Bristol*, 65 Me. 426; *In re Pennsylvania Hall*, 5 Pa. St. 204; *Allegheny County* v. *Gibson*, 90 id. 397; *Atchison* v. *Twine*, 9 Kan. 350; *Clear Lake Water-Works* v. *Lake County*, 25 Cal. 90; *Williams* v. *New Orleans*, 23 La. 507; *Folsom* v. *New Orleans*, 28 id. 936.

The doctrine of the State courts in such cases has received the approval of the Federal Supreme Court. *Louisiana* v. *New Orleans*, 109 U. S. 285; *Pennsylvania Co.* v. *Chicago*, 81 Fed. Rep. 317.

The General Assembly itself, it may be assumed, has full power to do whatever is necessary to keep the peace and insure domestic tranquility. One of the principal objects of government among men, as shown by the preamble and declaration of rights, is to "insure domestic tranquility" and "the protection of property." Const. 1870.

The legislature has undoubted power to compel the municipal bodies to perform their functions as local governments under their charters, and to recognize, meet and discharge the duties and obligations properly resting upon them as such, whether they be legal or merely equitable or moral; and for this purpose it may require them to exercise the power of taxation whenever and wherever it may be deemed necessary and expedient. Cooley's Const. Lim. (6th ed.) 283.

Whether the burden of enforcing police regulations, in the absence of express constitutional restrictions, shall be borne by the State at large or be devolved upon the local municipalities is a mere question of public policy, upon which the determination of the General Assembly is conclusive. *Marion County* v. *Lee*, 108 Ill. 343.

In an action of tort against a municipality for damages caused by a failure on its part to keep a sidewalk in repair, the defendant city cannot raise the question as to whether it is already indebted to an amount in excess of the constitutional limitation. *Bloomington* v. *Perdue*, 99 Ill. 329.

Under the police power of the State, laws having reference to the comfort, safety and welfare of society may be enacted, imposing new burdens on persons and property and restricting personal rights of enjoyment, when, in the opinion of the General Assembly, the public welfare demands it. *Frorer* v. *People*, 141 Ill. 171; *Burdick* v. *People*, 149 id. 600; *People* v. *Hill*, 163 id. 186.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellee brought its action on the case in the circuit court of Cook county, against the city of Chicago, to recover three-fourths of the value of a quantity of cement alleged to have been destroyed in consequence of a mob or riot in the city July 6, 1894. By agreement of parties a jury was waived and both matters of law and fact were tried by the court. The finding being for the plaintiff, judgment was rendered in its favor for $150 and costs of the suit. The city prosecutes this appeal.

The action is based upon the statute entitled "An act to indemnify the owners of property for damages occasioned by mobs and riots," in force July 1, 1887. (Laws of 1887, p. 237.) The first section of that act provides "that whenever any building, or other real or personal property except property in transit, shall be destroyed or injured in consequence of any mob or riot composed of twelve or more persons, the city, or if not in the city then the county in which such property was destroyed, shall be liable to an action by or in behalf of the party whose property was thus destroyed or injured, for three-fourths of the damages sustained by reason thereof." Section 2 authorizes the bringing of a suit in any appropriate form of action, and provides that "whenever any final judgment shall be secured against any such city or county in any such action, the same shall be paid in due course, as in case of other judgments." By section 3 no recovery can be had if the loss is the result of the carelessness, neglect or wrongful act of the plaintiff, nor un-

less such party shall have used all reasonable diligence to prevent the loss. Section 4 preserves the right of action against the parties engaged in the mob or riot or in any manner participating in the same, and gives the city or county paying the damages a lien upon any judgment so obtained against such individual. Section 5 gives the city or county an action over against any person or persons engaged or in any manner participating in the mob or riot. By section 6 no action shall be maintained under the act unless notice of the claim shall have been given within twenty days, and the action brought within twelve months after the loss or damage occurred.

Plaintiff, by its declaration, alleged all the facts made necessary by these several sections to entitle it to recover. The trial was upon a stipulation of facts between the parties, by which the defendant agreed that all the facts alleged in the declaration were true, and the plaintiff, on its part, admitted that at the time of the destruction of the property the city was indebted beyond the constitutional limit of five per centum on the value of its taxable property, and could lawfully obtain no funds for employing more firemen or policemen, or which could be expended for the purpose of protecting the plaintiff's property; that the funds which it had or could obtain were expended for the necessary running expenses of the city government, including the maintenance of the police and fire departments; also that, at the time of the destruction of the property, marshals appointed by the Circuit Court of the United States and soldiers of the regular army and State militia were present, engaged in protecting all public and private property within the city; that the city has now, and had at the time of the destruction of said property, no funds which, under the constitution and laws of the State, can be used to pay a judgment in the action, if one should be rendered against it.

The only question at issue upon the trial was the constitutionality of the statute declared upon, and the

court, in its rulings upon propositions of law submitted by counsel for the respective parties, decided in favor of the validity of the act. The correctness of that ruling is the only point presented for our decision.

Statutes similar to ours have been in force in England, as well as in several of the States in this country, for many years, and have uniformly been upheld by the courts. The constitutional right of legislatures to enact such laws under our form of government has been frequently challenged in courts of last resort, and our attention is called to no case denying that authority. The principle upon which these laws are held to be within the general scope of legislative power is stated in *County of Allegheny* v. *Gibson*, 90 Pa. St. 397, as follows: Speaking of the course of the ancient English law on the subject it is said: "Formerly, as we have seen, a person robbed had his remedy against any inhabitant of the hundred,— that is to say, the inhabitants were jointly and severally liable. Then the law was so changed that damages recovered against an individual could be assessed against all the inhabitants, so as to compel contribution. Afterwards it was still further modified so as to give the right of action against the hundred. The principle upon which this legislation rested was, that every political subdivision of the State should be responsible for the public peace and the preservation of private property, and that this end could be best subserved by making each individual member of the community surety for the good behavior of his neighbor and for that of each stranger temporarily sojourning among them. The effect was to make each citizen a detective, and on the alert to prevent, as well as to detect and punish, crime. * * * It was evidently a police regulation, based upon grounds of public policy, and in force without regard to the hardships of particular cases." And referring to the Pennsylvania act, which is very similar to that under consideration, it is further said: "Our act of 1841 is also a police regulation and rests

upon like grounds of public policy. Under our political system the State grants a portion of its sovereignty to certain municipalities. It clothes them with certain of its powers and exacts from them in return the performance of certain duties. Among the powers granted is that of maintaining a police force. Among the duties exacted is that of preserving the public peace. There is an implied contract between the State and every municipality upon which it bestows a portion of its sovereignty, that such municipality shall preserve the public peace and maintain good order within its borders. The State lends its aid when the local authorities are overborne and a call for assistance is made in the manner pointed out by law. But it is entirely within the power of the sovereign to make such communities responsible for the preservation of order. The privileges conferred must be taken with such burdens as the law-making power chooses to annex thereto."

In *Darlington* v. *Mayor of New York*, 31 N. Y. 164, the court of appeals having under consideration the statute of that State, passed in 1855, making counties and cities liable for property destroyed in consequence of mobs, said: "It cannot be doubted but that the general purposes of the law are within the scope of legislative authority. The legislature has plenary power in respect to all subjects of civil government which they are not prohibited from exercising by the constitution of the United States or by some provision or arrangement of the constitution of this State. This act proposes to subject the people of the several local divisions of the State, consisting of counties and cities, to the payment of damages to property in consequence of any riot or mob within the county or city. The policy upon which the act is framed may be supposed to be to make good at the public expense the losses of those who may be so unfortunate as, without their own fault, to be injured in their property by acts of lawless violence of a particular kind which it

is the general duty of the government to prevent; and further, and principally, we may suppose, to make it the interest of every person liable to contribute to the public expense to discourage lawlessness and violence and maintain the empire of the laws established to preserve public quiet and social order.    These ends are plainly within the purposes of civil government, and, indeed, it is to maintain them that governments are instituted, and the means provided by this act seem to be reasonably adapted to the purposes in view."

Except that of the State of Maryland, all of the statutes of this character, so far as we can ascertain, like our own, fix the liability of the municipality without reference to its ability or exercise of diligence to prevent the destruction, and that feature has not been considered by any of the courts passing upon the question, as an objection to their validity. In *County of Allegheny* v. *Gibson*, *supra*, it was said:   "It may seem a harsh rule to hold a community responsible for the effects of mob violence, which, apparently at least, they had no power to prevent, yet not more so than to hold every inhabitant of the English hundred liable for a robbery of which he knew nothing and had no means of arresting. *In both cases it is a police regulation.*   It is based upon the theory that with proper vigilance the act might and ought to have been prevented."   The following authorities either directly pass upon and sustain like statutes or recognize their validity and give force to them:   2 Dillon on Mun. Corp. sec. 959; *Davidson* v. *Mayor of New York*, 27 How. Pr. 342; *Luke* v. *City of Brooklyn*, 43 Barb. 54; *In re Pennsylvania Hall*, 5 Pa. St. 204; *Underhill* v. *City of Manchester*, 45 N. H. 214; *Williams* v. *City of New Orleans*, 23 La. Ann. 507; *Chadbourn* v. *Town of Newcastle*, 48 N. H. 196; *City of Atchison* v. *Irvine*, 9 Kan. 350; *Bringham* v. *Bristol*, 65 Me. 426; *Clear Lake, etc.* v. *Lake County*, 25 Cal. 90.

In *Marion County* v. *Lear*, 108 Ill. 343, the question being as to the constitutionality of the statute requiring

counties to pay sheriffs' fees in criminal cases where the defendants are acquitted, and to make up any deficiency in their salaries, we said, after holding that the passage of the law was an exercise of the police power (p. 349): "Whether the burden of enforcing police regulations in the absence of express constitutional restriction,—and none such is here claimed,—shall be borne by the State at large or be devolved upon the local municipality is a mere question of public policy, upon which the determination of the General Assembly is conclusive. A county is a public corporation, which exists only for public purposes connected with the administration of the State government, and it and its revenues are alike, where no express constitutional restriction is found to the contrary, subject to legislative control." See, also, *Harris* v. *Board of Supervisors*, 105 Ill. 445.

But counsel for the city assert that in none of the authorities cited as upholding the constitutionality of these mob or riot statutes were constitutional provisions in force like those contained in our constitution of 1870. It is not and cannot be denied that the legislature of this State has full power to enact all laws pertaining to the civil government of the State not prohibited by the Federal or State constitutions. The constitution itself confers that power, and as said in *Firemen's Benevolent Ass.* v. *Lounsbury*, 21 Ill. 511, (speaking of the constitution of 1848, similar in that regard to our present constitution): "The general grant of legislative power found in the constitution confers upon the General Assembly all legislative power and authorizes the law-makers to pass any laws and do any acts which are embraced in the broad and general word 'legislation,' as known and defined in the English language," etc. "The question of legislative power, and its extent, depends on the limitations contained in the constitution. When a State is created it is vested with complete sovereign power unless restricted by constitutional limitation. By section 1, article 4, of

our constitution, full, unlimited and uncontrolled legislative power is conferred and may be exercised unless limited by other provisions of that instrument or by the Federal constitution." *Harris* v. *Board of Supervisors, supra.*

It is not claimed that the statute in question is in any way violative of the constitution of the United States. The question then must be, has the city, by its counsel, succeeded in pointing out any provision of the constitution of this State which restricts, limits or prohibits the enactment of this law. The attempt to do so is by setting up the following sections of article 9, and the separate section prohibiting donations by municipal corporations to private corporations. These sections are as follows:

"Sec. 9. The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. For all other corporate purposes all municipal corporations may be vested with authority to assess and collect taxes, but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same.

"Sec. 10. The General Assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but shall require that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. Private property shall not be liable to be taken or sold for the payment of the corporate debts of a municipal corporation.

"Sec. 12. No county, city, township, school district or other municipal corporation shall be allowed to become indebted, in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property

therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness."

Separate section: "No county, city, town, township or other municipality shall ever become subscriber to the capital stock of any railroad or private corporation or make donation to or loan its credit in aid of such corporation."

Counsel for the city say in their argument (meaning, no doubt, sections 9 and 10): "These sections prohibit any increase of indebtedness of cities, direct or indirect, present, future or contingent, by or through any subsequent legislation; and, to be specific, prohibit any legislation which shall directly impose a debt or create a condition of affairs which will be likely to produce a debt, thus prohibiting the legislature from accomplishing the result by indirect methods which it is in terms prohibited from doing by direct provisions. In other words, the legislature is prohibited by these sections of the constitution from enacting any law which shall, in and of itself, provide or create a present debt or put into existence or motion any condition of affairs which will render it possible or probable that a municipal debt may thereby be created, such a law being in contravention alike both of the *terms* and of the *spirit* of the constitution."

If this proposition had been limited to indebtedness for *local or corporate purposes,* within the proper meaning of the term, it might, at least for the purposes of this decision, be conceded. In *Marshall* v. *Silliman,* 61 Ill. 218, the question "whether the legislature can create a debt against a municipal corporation for municipal purposes and subject it to a tax for its payment without its consent" was disposed of in the following language: "Our new constitution expressly prohibits this for the future, and the decisions of this court substantially hold that it could not be done under the constitution of 1848,"—citing and quoting from *Harward* v. *St. Clair Drainage Co.* 51 Ill.

130, *People* v. *Mayor of Chicago*, id. 17, *Hessler* v. *Drainage Comrs.* 53 id. 105, and *Lovingston* v. *Wider*, id. 302. The cases of *Cairo and St. Louis Railroad Co.* v. *City of Sparta*, 77 Ill. 505, *Updike* v. *Wright*, 81 id. 49, and *Choisser* v. *People*, 140 id. 21, simply follow the preceding cases in holding that debts for *merely corporate purposes* cannot be created against municipal corporations by the legislature, under our constitution, without their consent.

If it should be admitted that this act does create debts and impose taxes for their payment upon cities and counties without their consent,—a proposition in our opinion untenable,—still, unless it can be further successfully maintained that such debts are for local purposes,—merely and only for corporate purposes,—the foregoing sections of the constitution, as heretofore construed, do not prohibit or limit the power of the legislature to enact the statute. In *People* v. *Mayor of Chicago, supra*, Chief Justice BREESE, construing section 5 of article 9 of the constitution of 1848, and referring to *Harward* v. *St. Clair Drainage Co. supra*, said (p. 30): "To what extent it is to be construed as a limitation upon the power of local taxation directly by the legislature itself, it was not necessary in that case, nor is it in this, to decide. However strong the argument in favor of so construing it, there nevertheless may be cases where the legislature, without the consent of the corporate authorities, might impose taxes local in their character if required by the general good government of the State, because such taxes would not be merely and only for corporate purposes,—as, if one of the cities of the State should be insurgent, requiring the interposition of the military power, it will not be denied the State, on quelling the insurrection, could impose taxes upon the city to defray the expense of a resort to military power. So if the police department of a city should fail to furnish reasonable security to life and property, the State undoubtedly might provide such force and assess the city for the expense; but the tax author-

ized by the act in question is for a purpose purely local and corporate, having no other element about it, and the commissioners appointed by it are in no sense corporate authorities of the city of Chicago." This language clearly indicates that it was not intended by any of the decisions cited, to hold that the legislature might not create a debt against cities or counties and provide for the collection of the same, where it was done under a proper exercise of the police power, and hence they are in no way in conflict with what was decided in 108 Ill. and 105 Ill. *supra.*

In his work on Taxation, treating of the subject of local taxation under legislative compulsion, Judge Cooley, enumerating the cases in which such taxes are lawful, says (p. 686): "Mobs and riots—Another similar case is, where a municipal corporation is compelled, by means of taxation, to make compensation for losses sustained within its limits at the hands of mobs and rioters. It has been thought from very early times that that political division of the county which failed to exert its authority for the effectual suppression of disorder, by means whereof innocent parties suffer from lawlessness and violence within its boundaries, might justly be required to make good the losses, and that its diligence in maintaining the empire of the laws would be quickened by the requirement. Such legislation is, in effect, only a part of the State police system, under which the municipal divisions are severally looked to for the preservation of the public peace within their respective limits. And, speaking generally, it may be affirmed that in any case in which compulsory taxation is found necessary in order to compel a municipal corporation or political division of the State to perform properly and justly any of its duties as an agency in the State government, or to fulfill any obligation, legal or equitable, resting upon it, in consequence of any corporate action, the State has ample power to direct and levy such compulsory taxation, and the people

to be taxed have no absolute right to a voice in determining whether it shall be levied, except as they may be heard through their representatives in the legislature of the State." · The same author says, in his work on Constitutional Limitations (p. 283): "The legislature has undoubted power to compel the municipal bodies to perform their functions as local governments, under their charters, and to recognize, meet and discharge the duties and obligations properly resting upon them as such, whether they be legal or merely equitable or moral, and for this purpose it may require them to exercise the power of taxation whenever and wherever it may be deemed necessary or expedient."

Keeping in mind that the passage of this and similar laws is for the better government of the State,—is a mere police regulation,—sections 9 and 10 of the constitution in no way limit the power of the General Assembly to enact them. There is still less reason for the contention that section 12, *supra*, is such a limitation. By no possible construction can it be held to create a debt against municipal corporations of any particular amount, much less of an amount exceeding the constitutional limit. We certainly cannot be asked to assume that every county and city in the State would be compelled to become indebted, by its enforcement, to an amount, including existing indebtedness, exceeding five per centum on the value of its taxable property, in order to justify a holding against the validity of the act. Whether or not the city of Chicago was, at the bringing of this suit, indebted beyond that amount is wholly immaterial in determining the constitutionality of the law. That question could only arise, if at all, upon a proceeding to collect the judgment.

But aside from the foregoing considerations, as already intimated, we do not think the act, in any proper sense, creates a debt against cities and counties. It does no more than provide that under certain circumstances

they shall be liable to owners for property destroyed by mobs and riots. Owners seeking to recover for such loss must, as in any other case, make out their cause of action by alleging and proving all the facts prescribed by the several sections of the act. This right of action is no more a debt against a city or a county than is the right of recovery against such municipality for any other wrong or injury. The New York constitution provided that on the final passage in either house of the legislature of every act which imposes, continues or revives a tax, etc., three-fifths of all the members should be necessary to constitute a quorum. In *Darlington* v. *Mayor of New York, supra*, it was insisted the Mob act of that State imposed a tax, and that the constitutional quorum was not present when it passed. Denio, Chief Justice, rendering the opinion of the court, said: "The act of 1855 does not impose a tax of any kind, either State or municipal. Its provisions may, and doubtless will, lead to the necessity of local taxation; and the same thing may be said of every act of legislation under which an expenditure for general or local purposes may, in any contingency, be required. If a local tax in a city or village is within the scope of the section it will be sufficient to have the requisite quorum present when the tax shall come to be voted. The act does not create a debt or claim. If no person should suffer damage by riot or mob no money would be required and no debt or charge would ever be created, and until such an event shall occur no debt or claim will be called into existence." Under the Illinois statute there must not only be a loss by mob or riot, but the owner must have been free from fault and given the required notice, etc., before money can be required or a debt or charge created.

What has been said disposes of the contention that the act violates the separate section quoted above. The statute does not make or provide for making a donation to any one.

Neither the wisdom of this law nor the hardships which it may impose upon municipalities without any fault or neglect of duty upon their part are matters for discussion or decision in passing upon its constitutionality. These are questions for the legislature, and not for the courts. The oft repeated rule is, "that to render a statute unconstitutional it must be clearly violative of the plain provisions of the constitution. All doubts and uncertainties arising, either from the language of the constitution or the law, must be resolved in favor of the validity of the statute. Every intendment is in favor of the constitutionality of enactments of the legislature."

After giving the question here involved the careful ·consideration its importance deserves, we are of opinion that no sufficient reason is shown for holding the act in question unconstitutional. The judgment of the circuit court will accordingly be affirmed.

*Judgment affirmed.*