## WILLIAM C. ACHI *v.* THE KAPIOLANI ESTATE, LIMITED.

### DECIDED:  APRIL 24, 1901.

1.  The Territorial Stamp Act, passed by the Legislature of the Kingdom of Hawaii in 1876, and now known as Chapter 64 of the Civil Laws of Hawaii (1897), was not repealed by the Act of Congress passed for the government of the Territory of Hawaii, and its provisions are now in full force and effect.

2. The Organic Act passed by Congress for the government of a territory, and under which the territorial government is organized, must be taken as the fundamental law of the territory; and all territorial legislative assemblies derive their force and validity from such Organic Acts.

3. A territorial legislature has the power to levy taxes for all legal purposes and upon property subject to taxation within its jurisdiction.

4. The presumption of law is always in favor of the constitutionality of a statute, and whenever a court entertains a reasonable doubt concerning its constitutionality, it must be resolved in favor of the statute.

5. Chapter 64 of the Civil Laws of Hawaii, 1897, relates to taxation for local and municipal purposes only, and its provisions are not contrary to Subdivision 1, Section 8, of Article 1 of the Constitution of the United States.

6. The provisions of Subdivision 1, Section 8, of Article 1 of the Constitution of the United States, that all taxation "shall be uniform throughout the United States," relates solely to taxation for national purposes, and has no reference to local or municipal taxation in states or territories.

7. A bill was filed to compel the defendant to specifically perform a contract to deliver a good and lawful deed to complainant of certain property, by affixing thereto the stamps required by the provisions of Chapter 64 of the Civil Laws of Hawaii (1897), which defendant had refused to do. Upon demurrer filed to said bill on the ground that the same did not state facts sufficient to constitute a cause of action against defendant, in that the said Chapter 64 was contrary to the Constitution of the United States, the same was overruled, and defendant given ten days in which to answer.

. ON DEMURRER TO BILL FOR SPECIFIC PERFORMANCE.

*Peterson & Mattewman,* for petitioner.
*Kinney, Ballou & McClanahan,* for defendant.

This is an action brought for the specific performance of a contract for the purchase and sale of certain real estate described in the complaint, which is valued at $300,000, and it is alleged that the Respondent was to deliver to Complainant, a good, sufficient and lawful deed; that on the contrary, Respondent tendered to the Complainant a deed which was not good, sufficient or lawful in that it does not comply with the terms of Chapter 64 of the Civil Laws of the Territory of Hawaii in this,

that it does not bear the territorial stamps required by the provisions of said law.

That Respondent has been often requested by Complainant to affix to the said deed, the stamps required by the said Civil Laws of the Territory of Hawaii, to render the said deed good, sufficient and lawful, but that defendant refused, alleging that under the Constitution and laws of the United States of America, it is not obliged so to do.

Defendant served and filed a demurrer to the complaint, alleging "That the said bill of complaint does not state facts sufficient to constitute a cause of action in this, that the Constitution and laws of the United States do not require the said defendant to affix to the said deed any further or other stamps than those already affixed, being the stamps prescribed by the laws of the United States."

The demurrer in this case raises the single point as to the contitutionality of the law of the Territory of Hawaii imposing stamp duties on conveyances of real property.

This territorial stamp act, now known as Chapter 64 of the Civil Laws of Hawaii (1897), was passed under the Hawaiian monarchial government in 1876, and long prior to annexation, and it has remained in force through the whole period of the Hawaiian Republic, and was continued in force by the Enabling Act passed by Congress. (See Secs. 5, 6 and 7 of said Act.) But it is argued by the parties demurring to this complaint, that the territorial stamp act is unconstitutional because it violates subdivision 1, section 8 of Article 1 of the Constitution of the United States, which reads as follows:

"The Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States." That this stamp tax is not uniform throughout the United States and hence unconstitutional. That by Section 5 of the Act to provide for a government for the Territory of Hawaii, it is prescribed, "That the Constitution

and except as herein otherwise provided, all the laws of the United States which are not locally inapplicable, shall have the same force and effect within the said territory, as elsewhere in the United States;" while Section 6 of the same Act prescribes, "that the laws of Hawaii, not inconsistent with the Constitution or laws of the United States or the provisions of this Act, shall continue in force. * * * * *"

Counsel claims that this territorial stamp law is inconsistent with the Constitution and laws of the United States, and therefore not continued in force.

It is argued by defendant that the Constitution of the United States, is by special enactment extended over the Territory of Hawaii, and that the same rule of taxation under the Constitution, prevails in the Territory of Hawaii as exists in the several states of the Union, namely, that all taxation must be equal and uniform.

And 2nd. That under this stamp law, taxation would not be equal and uniform, because the same law is not in force in the states forming the American Union, as is in force in the Territory of Hawaii, and therefore the constitutional rights of defendant are invaded, and

3rd. That defendant's constitutional rights are further invaded, because after paying the stamp tax provided by the laws of the United States, and which the people of the States pay, the defendant is compelled to pay a large territorial stamp tax on the same instruments already stamped under the laws of the United States, and thus the citizens of Hawaii are burthened with a system of local taxation which the Constitution of the United States prohibits. These are substantially the points made by defendant.

Admitting this to be true, the answer seems to be that the right of taxation for municipal and local purposes is unquestioned in the states and territories, unless such local taxation oversteps the restraints which the Constitution of the United States, or the laws of Congress throw as a shield around the property rights of the people.

There is no doubt that the provision in the national Constitution which says that all taxation shall be equal and uniform, relates solely to taxation for national purposes and taxation between the states. It has no reference to local or municipal taxation in states or territories. It is needless to submit that taxation is necessary in all organized communities, whether territorial or state.　　　　　　　　　　，　　　　　　　　，

It is true that in the territories all taxation must be authorized by Act of Congress or by a necessary implication flowing from some Act of Congress.

It may be admitted the Territory of Hawaii possesses only such powers as Congress has granted to it; unlike a state, this territory is not sovereign, unless Congress endows it with sovereignty; yet having been organized by Act of Congress as a territory of the United States, it is by that Act alone given the right to govern.

The territory must maintain itself; it can only do that by some method of taxation.

As was said by Attorney General Griggs in his brief filed in the case of *Goetze v. United States* and other cases recently argued by him in the Supreme Court, and referring to *Knowlton v. Moore*, 178 U. S. 41, which is a ruling authority in this case, "uniformity as to taxation historically meant to protect the states against inequality imposed upon each other ＊ ＊ ＊" "There was not any reason why that should apply to the territories," said the Attorney General; "they were to be governed by the discretion of Congress," page 131 of brief.

It is doubtless true the Constitution reaches its broad and protecting aegis over this land, and over this people, but except in rare instances, the Constitution is not appealed to in local and police matters.

The police powers of this territory like the police powers of the states, reaches all local and incidental matters of moment.

It is doubtless true that the Congress of the United States is the only sovereign power now presiding over the destinies of Hawaii, and while a territory, the people of Hawaii possess no

power to tax themselves, even for themselves, unless that power is granted to them by Congress, or is derived by necessary implication, or is incidental to its territorial enabling act.

The question then arises, has Congress given to the people of Hawaii the right of local taxation.

It will be seen that by the terms of Sections 5, 6 and 7 of an Act of Congress to provide a government for the Territory of Hawaii, approved April 30, 1900, all laws of Hawaii which are repealed by that Act are so repealed by reference; those not so referred to as repealed are continued in force. This Stamp Act is continued in force and is the law of the Territory today. It was doubtless deemed by Congress to be a fair system of taxation for local purposes, and because some local taxation was necessary to maintain the territorial government which Congress had created, it was continued in force.

It has been seen that Congress has a clear right, under the Constitution, to govern the territories, and the right of taxation is one of the highest attributes of government, and a necessary incident to this right. *Murphy v. Ramsey*, 114 U. S. 15, 44; *Boyd v. Nebraska ex rel Thayer*, 143 U. S. 135, 169.

It was held in the last above case, that "it is too late at this day to question the plenary power of Congress over the territories," and the power to govern carries with it the responsibility of governing well.

It is doubtless true that the personal and civil rights of the inhabitants of this territory are secured by the Constitution of the United States, and that taxation is not one of the burthens the people of this territory can avoid.

When Hawaii was annexed, it was with the implied understanding that the people of this territory, could and would under the direction of Congress govern themselves, and as it was then a Republic, it was supposed to be capable of self-government.

So the United States annexed the land and the people, and the people who were citizens of the territory, became citizens of the United States and are such citizens now. It was held in

*Shively v. Bowlby*, 152 U. S. 1, 48, "that by the Constitution, * * * the United States having rightfully acquired the territories, and being the only government which can impose laws upon them have the entire dominion and sovereignty, national and municipal, Federal and State, over all the territories, so long as they remain in a territorial condition."

See also, *American Insurance Co., et al., v. Canter*, 1 Peters, 511-542; *Benner v. Porter*, 9 Howard, U. S. 235-242; *Cross et al., v. Harrison*, 16 Howard, 164-193; *National Bank v. Yankton*, 101 U. S. 129-133; *Shively v. Bowlby*, 152 U. S. 1, 48.

The Organic Act passed for a territory and under which a territorial government is organized, must be taken as the fundamental law of that territory, and all territorial legislative assemblies derive their force and validity from such Organic Acts. See *National Bank v. Yankton Co.*, 101 U. S. 129, 133; *Ferris v. Higley*, 20 Wall, U. S. 375, 380.

This stamp Act having been continued in force by Congress, it is the law of this territory unless it violates the Constitution of the United States. In this connection it should be said that "All restrictions upon the powers of territorial legislatures must be found in the Organic Laws creating the territory, or in the Acts of Congress supplemental thereto." See *Spies v. Illinois*, 123 U. S. 131; *United States Revised Statutes* Sec. 1851; *Ferris v. Higley*, 20 Wall, U. S. 375.

In the past Congress has been very careful as to taxation in the territories. For instance: The property of non-residents of a territory cannot be taxed higher than the lands or property of residents. See *Revised Statutes*, Sec. 1851.

So the right of suffrage in the territories is conferred by Congress on all citizens of the United States, thus securing to the people all the rights of American citizenship. See *United States Revised Statutes*, Sec. 1860.

It has long been the admitted law of our country that a territorial legislature has the power to levy taxes for all legal pur-

poses and upon property subject to taxation within its jurisdiction.

The question then presented is, is this taxation for a legal purpose? Every presumption is in favor of that proposition until the contrary is made to appear.

The usual argument that the Constitution follows the flag finds but a faint echo in this case; but it may be said that in some things the Constitution does follow the flag, but not to the extent claimed. There are certain personal rights made secure to all American citizens by the Constitution of the United States wherever the citizen may be, which rights have a personal and not a territorial application: among these rights are, that no bill of attainder, or *ex post facto* law shall be passed; that no American citizen shall be deprived of his property except by due process of law; that his life and liberty are both made secure in the territories and in the states alike; that religious liberty is guaranteed to all men; that neither slavery nor involuntary servitude shall exist anywhere in the United States; that the writ of *habeas corpus* is a writ of right which follows the man wherever he may be on American soil. These are some of the great American principles which go with the flag, and abide with the citizen. It requires no Act of Congress to give additional force to these matters. No legislation, local or national, can violate any one of these sacred principles. They are the immovable mile-stones of American liberty—the great and never failing shield of American citizenship.

But notwithstanding these and other exceptions, all laws, state, territorial and national, are presumed to be constitutional until the contrary appears and Courts hesitate before declaring any law unconstitutional. They never do this unless compelled to do so, and most rarely laws affecting the revenues, because local government cannot exist without revenue.

This Stamp Act seems to be within the taxing power of the Territory of Hawaii. The presumption of law is always in favor of the constitutionality of a statute, and whenever a court entertains a reasonable doubt concerning the constitutionality of a

statute, that doubt must be resolved in favor of the statute.  See *Rex v. Young Tang*, 7 Haw. 49, 60 and 61.; *People v. Hayne*, 83 Cal. 111; *State v. Moore*; 104 N. C. 714; *Nicol v. Ames*, 173 U. S. 509; *Burlington, Etc., Railway v. Dey*, 31 Am. St. Rep. 477;   82  Iowa,  312;  *Stevenson   v.   Colgan*   91 Cal. 649; *Wadsworth   v.   Union   Pacific   Ry.   Co.*,   18  Colo.   600; *In   re Madeira Irrigation District*  92  Cal. 296; *Conlin v. Board of Supervisors*, 99 Cal. 17; *State v. Roby et al.*, 142 Ind. 168; *State v. Bargus*, 53 Ohio St. 94; *Farmers' Independent Ditch Co. v. Agricultural Ditch Co.*, 55 Am. St. Rep. 149; 22 Col. 513; *State v. Tibbitts*, 52 Neb. 228; *People v. Simon*, 176 Ill. 165; *City of Chicago v. Manhattan Cement Co.*, 178 Ill. 372; *Austin v. State*, 101 Tenn. 563.

This tax was not levied as in *Loughborough v. Blake*, 5 Wheat. (U. S.). 317, cited by counsel for defendant.  The taxes there referred to comprehend taxes for national purposes only.

So too the case of *Stoutenburgh v. Hennick*, 129 U. S. 141, also referred to by counsel, is not analgous; because in that case Congress had not given the District of Columbia the authority to levy the tax complained of.  Mr. Chief Justice Fuller said in the beginning of his opinion in that case:

"It is a cardinal principle of our system of government that local affairs shall be managed by local authorities". . . but "in the matter of interstate commerce, the United States are but one country and are and must be subject to one system of regulations."  And the tax was there declared illegal because it violated interstate commerce which is controlled by Congress.

But in this case  the facts are that when the territorial act of Congress was passed, which went into effect on the 14th of June, 1900, the territorial stamp act of Hawaii so-called, was already in force and the revenue thus derived was for local purposes. Hawaii was then a nation with all the governmental machinery of an independent state.  It had a large number of public officers whose duties were fixed by law, and a vast amount of expenses were being incurred which was recognized by Congress.

None of the money received from the Territorial Stamp Act formed a part of the national revenue.

To recapitulate: Congress created this territory; gave it a name; provided for territorial and national Courts; repealed or continued in force the civil and criminal laws then in force in the territory; provided for public officers, and continued the laws which fixed their duties, and prescribed their compensation; created a territorial legislature and established its powers, and the duties of its members; authorized the creation of territorial indebtedness and provided for its payment; in a word, established civil government here. Finally by Sec. 91 of the Enabling Act, prescribed "That all public property ceded to the United States by the Republic of Hawaii, under the Joint Resolution of Annexation, approved July 7th, 1898, shall be and remain in the possession of the Government of the Territory of Hawaii, and shall be maintained, managed and cared for by it, at its own expense until otherwise provided for by Congress   *   *   *   * "And all revenues and other property acquired by the Republic "of Hawaii since said cession, shall be and remain the prop- "erty of the Territory of Hawaii." Thus while in name this is a territory, yet in many of its governmental attributes it has all the powers of a state. There is no limit placed upon its taxing power, except as to the accumulation of debts. It is given full authority to maintain the public peace, and to provide for the common defense, and even the most unusual authority of suspending the writ of habeas corpus and controlling the military of the United States is allowed. See Sec. 67 of the "Act to Provide a Government for the Territory of Hawaii."

After such far-reaching powers are conferred, this Court will not make haste to find constitutional objections to the laws of this territory. As has been said, all laws are presumed to be constitutional, and that presumption must be overcome by an unquestioned weight of authority, before this Court will judicially determine that a territorial revenue law is unconstitutional, and therefore void.

There is an added reason in the fact that we are remote from the home government; that this territory must rely on its own resources to maintain itself; that an appeal to the Supreme Court of the United States requires much time and expense; and further, it would materially affect the revenue to interfere with this law.

In a case where the personal or property rights of the citizen are under the Constitution clearly involved or imperilled, this Court, in common with all other courts of our country, will go to the fullest extent to vindicate the rights of the citizen.

But this Stamp Act was passed by the Hawaiian Legislature at the session of 1876, and so it has been in force many years. In 1891, the Supreme Court of the then Kingdom of Hawaii, in the case of the *Hilo Sugar Co. v. Mioshi*, 8 Hawaiian, 201, 211, sustained the law, and again *In the Matter of the Appeal of the Hawaiian Tramways Co.* 9 Hawaiian 281, the same law was considered and sustained; and still again in *"In the Matter of the Appeal of the Hawaiian Commercial Co., etc.*, 10 Hawaiian, 514, the law was further sustained. This was as late as 1896. Several legislatures have been in session since then, and it has not been repealed. And therefore, except for most abundant reasons, this Court will not now declare it void on the ground that it is unconstitutional.

There is nothing in the Constitution of the United States which prohibits within the states or territories, where Congress has granted the right, any reasonable taxation for local purposes. In most of the states and territories there are local road and school taxes levied and collected often by townships and always to maintain local government. These have rarely, if ever, been attacked on constitutional grounds, and yet the rate of taxation in different localities in the same counties differs as the necessities of the people differ. The right of representation and taxation are among the grandest achievements of our fathers, which achievements resulted in the bringing near to the people who were taxed, the power to control the right and amount of such taxation, and in all local matters, this power

has never been doubted by any considerable number of Americans.

The people who live here, who pay the taxes and who expend the money after collection, know best what is needed. It is contrary to the spirit of our institutions to go five thousand miles to find out what form of taxation is best suited to this enlightened community, when the general power of taxation is granted by Congress, and this Court will not, in cases of doubtful constitutional authority, over-ride a co-ordinate branch of the government.

The Court holds that the territorial stamp act referred to, is constitutional.

Let the demurrer be overruled, the defendant to have ten days to answer.