Fannie J. Willard, Administratrix, Plaintiff in Error, v. The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, Defendant in Error.

### Gen. No. 14,930.

1. EVIDENCE—*when question incompetent as calling for a conclusion.* A question as follows is incompetent as calling for a conclusion: "Mr. Willard, what services were you to perform for the salary paid to you by the Pan Handle Railroad—the defendant company?"

2. CONTRACTS—*when compensation in excess of salary cannot be recovered.* If a contract upon a salary basis for legal services to be rendered in certain territory is shown, the burden is upon the claimant to show that it was the intention of the party that certain services rendered within such territory were not rendered under the salary arrangement before extra compensation can be obtained therefor.

Assumpsit. Error to the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed April 8, 1910.

PLINY B. SMITH, for plaintiff in error.

LOESCH, SCOFIELD & LOESCH, for defendant in error.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

This action of assumpsit was brought by plaintiff's in error decedent. The suit is for legal services claimed to have been rendered, outside of services covered by a regular salary received by decedent as defendant's district solicitor. At the close of plaintiff's case the trial judge directed the jury to return a verdict for the defendant and upon the verdict returned accordingly rendered a judgment for the defendant. Plaintiff prosecutes this writ of error to reverse that judgment.

The controversy is whether the legal services in suit were in fact extra services, not embraced in plaintiff's contract of employment as district solicitor, and this controversy necessarily involves an inquiry as to what the terms of the contract of employment were, with reference to the services to be rendered thereunder.

Defendant is a company, formed in 1890 by the consolidation of various railroads. One of the constituent companies is the Pittsburgh, Cincinnati & St. Louis Railway Company. In 1880 and for some time thereafter Mr. J. T. Brooks, now deceased, was general counsel for the Pennsylvania Company and for the Pittsburgh, Cincinnati & St. Louis Railway Company. Plaintiff's decedent, Mr. Willard, was in that year engaged in the general practice of the law with offices in Chicago; and he so continued thereafter, during his employment as defendant's district solicitor. In October, 1880, Brooks came to Chicago and engaged Willard as district solicitor for the Pennsylvania Company at a salary of $225 per month. This was a temporary employment. In February, 1881, this employment was made permanent and was extended to include the Pittsburgh, Cincinnati & St. Louis Railway Company. The employment continued after the consolidation until May, 1906. In 1892 the salaries were increased to

412    APPELLATE COURTS OF ILLINOIS.

Willard v. The Pittsburgh, C., C. & St. L. Ry. Co., 155 Ill. App. 410.

$262.50 per month. After his appointment Willard continued the practice of the law in his own offices. Defendant furnished neither office room nor supplies, with the exception of some special stationery. The contract of employment appears to have been made verbally. Although Willard testified that his appointment was made both by letter and verbally, no letter or other written evidence of the contract of appointment was introduced in evidence.

During the trial plaintiff's attorney, for the purpose of proving the scope of the contract of employment, asked the following question: "Mr. Willard, what services were you to perform for the salary paid to you by the Pan Handle Railroad—the defendant company?" The question was objected to for various reasons and is decidedly objectionable because it called for the witness' conclusion and for his interpretation— not his recollection—of what was said, that is, of the language used by the parties when the contract of employment was made. *In re* Estate of Benton, 153 Ill. App. 56. The court, however, overruled the objections made and permitted the witness to answer. Willard then answered: "Well, I was to attend to the prosecution and defense of suits to which the Company was a party. I attended to the prosecution and defense of law suits to which the railroad company was a party. I examined loss and damage claims, and heads of departments and agents of the company consulted with me whenever they had business of the company desiring my advice. That is the substance of my work." Mr. Willard also testified that services for the company outside of those "mentioned" "were paid for by the company specially, that is, they were regarded and treated as additional to the salary fixed;" that in October, 1880, Mr. Brooks told him that the monthly salary for his services for "the Pennsylvania Company was $225 per month and that that did not include the entire benefit or compensation which would come with the office of solicitor, that outside of that regular busi-

ness there would be a great deal of work which would not be paid for at a regular salary and the two taken together would be attractive;'' and that in December following he had a conversation with Mr. Brooks, in Pittsburgh, in which Brooks ''stated that he expected there would be a vacancy in the solicitorship of the Pan Handle Road in a short time and that the company, or he as general counsel, would add that road to my practice on the same terms that he had arranged with the Pennsylvania Company.''

On behalf of plaintiff a by-law of the defendant company, adopted September 18, 1890, relative to the duties and compensation of the district solicitors, was introduced in evidence. We see nothing material in that by-law, so far as the issues in the present suit are concerned.

As tending to prove that he was entitled to be paid for the legal services now in suit as extra services, not included in the services he was obliged to render for the salary paid him, Willard enumerated the instances when he did work for either the Pan Handle Company (the defendant) or the Pennsylvania Company and was paid specially, outside of his salary. It appears that during the period of twenty-six years' service by Willard upon salary, there were four such instances. The first instance was one where, at the request of the general counsel of defendant, he went to Springfield, Illinois, during a session of the legislature, to procure the passage of an amendment, which affected the charter of the defendant, to the general railroad corporation laws. This service was specially paid for by the defendant. The second instance was one where Willard rendered services at Chicago and at Springfield, in the Federal Court for the Southern District of Illinois, in a suit brought by the Keokuk and Hamilton Bridge Company against the Pennsylvania Company, the Columbus, Chicago and Indiana Central Railway Company and the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. In this instance Willard

414     Appellate Courts of Illinois.

Willard v. The Pittsburgh, C., C. & St. L. Ry. Co., 155 Ill. App. 410.

went out of his district in rendering services and his compensation, as he states, came through Brooks, the general counsel. The third instance was one where a bill for an injunction was filed against the Wabash Railroad Company and the defense was taken up by the Central Freight Association of which the Wabash, the Pennsylvania Company and the Pan Handle and quite a number of other roads were members. At a meeting of the members of the association four or five lawyers were appointed to defend, and of these only three were active, one of them being Willard. For this service Willard was paid an extra compensation, which he states came through Brooks. The fourth instance was one where a shipper of some lost freight was referred by Brooks to Willard, who prosecuted a claim therefor against the Indiana, Illinois & Iowa Railroad Company. Willard retained his compensation for the services he rendered out of the proceeds of the collection. None of these instances have the slightest tendency or bearing in support of plaintiff's position or claim. Particularly does this appear when it is borne in mind that Willard was appointed district solicitor for a district consisting of Cook county only and that, according to his own view, so far as suits were concerned, his salary contract only required him to prosecute and defend suits to which the company was a party.

There is no doubt that the contract was not such that Willard might not render services for defendant for which he would be entitled to special or extra compensation beyond his salary. Taking his own version of his contract, he was, nevertheless, clearly not entitled to recover special or extra compensation, beyond his salary, for the services for which this suit is brought. Those services were rendered in connection with claims against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company and the Pennsylvania Company, made or anticipated and arising out of the destruction of property in possession of those companies as freight

during the Chicago riots, in June and July, 1894. The companies contended they were not liable to the shippers. A statute entitled "An act to indemnify the owners of property for damages occasioned by mobs and riots" made the city of Chicago liable for the property for which claims against the companies were made or anticipated. In order to avoid suits against itself, under the direction of Brooks, general counsel, defendant procured powers of attorney from twenty-three of those who made claims against it to present and prosecute these claims against the city of Chicago, at the expense of the company, for destroyed property in defendant's possession during those riots. Notices to be served upon the city and these powers of attorney were sent to Willard from Pittsburgh, and Brooks directed him to attend to the claims. This was about August 1, 1894. Willard instituted suits and filed declarations. The nature and character of all the claims were the same. Some of the declarations were prepared by a manifolding process. The suits were brought in three batches. Two years elapsed before any of the cases were reached for trial. By agreement one case, the Manhattan Company case, was tried by waiver of a jury and submission to the court. In that case a judgment for about $100 was rendered and the case was carried to the Supreme Court where the judgment was affirmed in February, 1899. Chicago v. Manhattan Cement Co., 178 Ill. 372. Two other cases were tried before juries and verdicts were returned for the defendant and set aside. None of the remaining cases was tried. Thus matters stood when Willard's district solicitorship ceased, in May, 1906. There is no evidence of any express promise, either oral or in the correspondence, of special or extra compensation for the services rendered in these twenty-three suits. No charge against the defendant company was made by Willard in his account books for services rendered in connection with these claims or any of them. No claim for compensation was made by him for these services

416          APPELLATE COURTS OF ILLINOIS.

Willard v. The Pittsburgh, C., C. & St. L. Ry. Co., 155 Ill. App. 410.

until some time after he had withdrawn his appearances at the request of the general solicitor and after the termination of his solicitorship. In explanation of these facts of no charge being made and of no claim being made until after the termination of his relation with the company, Willard testified that with reference to special or extra work it was the practice to uniformly postpone paying him therefor ''until the work was entirely completed so that it could be included in one item.'' He also testified that during the ten years these cases were pending under his administration he devoted to them about one hundred days of work.

As already stated no express promise of special or extra compensation appears. In view of the salary contract shown (the evidence of which is very unsatisfactory) and the fact that Willard was district solicitor of defendant for Cook county, the state of facts shown by this record, regarding the matters for which extra compensation is claimed, is not such as to be sufficient to permit a jury to find an implied promise of extra compensation. While defendant herein was not a party in the twenty-three suits of record, yet it was a party directly in interest, indeed, so much so that in fact it undertook the prosecution of the suit without compensation. In order to avoid defending twenty-three suits against itself it was, as the evidence shows, anxious to undertake the bringing of the suits against the city.

The evidence in the record does not disclose that the work for which recovery is sought was beyond the scope of the salary contract. The learned trial judge did not err in peremptorily directing the jury to return a verdict for the defendant. The judgment will be affirmed.

*Affirmed.*