## SOUTHWEST MISSOURI LIGHT COMPANY, Appellant, v. SCHEURICH et al.

Division One, April 1, 1903.

1. **Eminent Domain:** MILLDAM: ELECTRICITY AND WATER. The Missouri laws do not permit a private business corporation organized to furnish light and water for pay to neighboring cities and their inhabitants, to exercise the power of eminent domain to condemn private property for the purpose of building and maintaining a milldam across a creek with the view of creating a waterfall and obtaining water power with which to manufacture electricity and gas. Private property can be condemned for a milldam only when the power thereby gathered is to be used for running a public mill, that is, a gristmill.

2. ———: ———: MEANING OF STATUTE: CONTEMPORARY HISTORY. The courts in construing the meaning of a statute may consult contemporaneous history and the necessities of the country when the Legislature enacted it. And guided by this rule the words "mill" and "milldam" as used in our statute are held to mean gristmill and a dam constructed to furnish water power to such mill.

3. ———: "MILL AND OTHER MACHINERY." The words "mill and other machinery" as used in the statute in connection with the construction of a milldam mean mill and other machinery of the same kind, that is, machinery that is appurtenant to the gristmill property, as bolting machinery, grain elevators, etc.

Appeal from Newton Circuit Court.—*Hon. Henry C. Pepper,* Judge.

AFFIRMED.

*John A. Eaton* and *W. R. Thurmond* for appellant; *John T. Sturgis* of counsel.

(1) The "Milldam Act" is constitutional. Similar acts have been enacted in nearly all, if not every State in the Union, and such acts have been held to be constitutional by the appellate courts of every State where they have been called in question, with the possible exception of three States. State v. Gilmore, 141 Mo. 506; Head v. Amoskeag Mfg. Co., 113 U. S. 9; Olmstead v. Camp, 33 Conn. 532; 89 Am. Dec. 221; Todd v. Austin, 34 Conn. 78; Hawkins v. Lawrence, 8 Blackf. (Ind.) 266; Burnham v. Thompson, 35 La. 421; Venard v. Cross, 8 Kas. 248; Harding v. Funk, 8 Kas. 315; Boston & Roxbury Mill Co. v. Newman, 12 Pick. 467, 34 Am. Dec. 622; Hazen v. Essex Co., 12 Cush. 475; Mfg. Co. v. Fernald, 47 N. H. 444; Mfg. Co. v. Head, 56 N. H. 386; Mfg. Co. v. Worcester, 18 N. H. 522; Ash v. Cummings, 50 N. H. 591; Lowell v. Boston, 111 Mass. 454; Scudder v. Falls Co., 1 Saxton Ch. 695, 23 Am. Dec. 756; Newcomb v. Smith, 1 Chand. 71; Holyoke Water Co. v. Lyman, 15 Wall. 500; Mining Co. v. Seawell, 11 Nev. 394. In many States such acts have not

been questioned, but dams have been constructed by virtue thereof and the courts have passed on other questions raised in suits growing out of the erection of such dams, assuming that there was no question as to the validity of the act itself. State v. Gilmore, 141 Mo. 506; Groce v. Zumwalt, 4 Mo. 567; Hook v. Smith, 6 Mo. 225; Arnold v. Keppler, 24 Mo. 273; Willoughby v. Shipman, 28 Mo. 50; Huffman v. Vaughn, 72 Mo. 465. (2) The purposes for which appellant asked to use the power furnished by the water and for which the evidence clearly shows it intended to use it and had contracted to use it, were strictly public uses, namely, for lighting the streets of cities and the houses of any one who desired light. R. S. 1889, secs. 2793, 2794 (R. S. 1899, secs. 1341-2); Building Ass'n v. Bell Telephone Co., 88 Mo. 258; Glaessner v. Anheuser-Busch Brewing Ass'n, 100 Mo. 514; State ex rel. v. Murphy, 134 Mo. 561; State ex rel. v. St. Louis, 145 Mo. 575; In re Gas Light Co. v. Richardson, 63 Barb. 437; Lamborn v. Bell, 18 Colo. 346; Lewis on Eminent Domain, sec. 173. (3) The principal question passed upon by the court below being the nature of the use to which the power afforded by the dam had been and was to be devoted, the court erred in excluding the record and documentary evidence offered. This evidence was competent to show, and did show, the use to which the power furnished by the dam was to be and had been applied.

*C. H. Montgomery* for respondents.

(1) The public use of anything is the employment or application of the thing to the public. Public use means the same as use by the public. Lewis on Eminent Domain (2 Ed.), sec. 165, p. 416. A railroad which is not required to serve the public can not be authorized to even cross the streets and alleys of a city or town by the municipal authorities, and a railroad track constructed under such unlawful ordinance con-

stitutes a public nuisance.    Glaessner v. Anheuser-Busch Brewing Ass'n, 100 Mo. 508; Dietrich v. Murdock, 42 Mo. 279; Lewis on Eminent Domain (2 Ed), sec. 171, pp. 437-440.    (2)    This company has not the power to condemn land for its pole line in order to convey away-from the dam the electric current generated there.    Section 1341, Revised Statutes 1899, provides that cities may authorize light companies to use the streets of cities under certain restrictions, but the power is withheld to use the public roads, so the order of the county court of Jasper county, authorizing appellant to use the public roads, is void.    (3)    Appellant can not locate his plant at the falls outside the city and county on the plea that it can more cheaply generate the electric current.    Railroads can not condemn land upon which to build manufactories to make cars and engines, because they may make them better or cheaper.    Lewis on Eminent Domain (2 Ed.), sec. 170; Eldridge v. Smith, 34 Vt. 484.    Where, under a general railroad law, a road is built for private use, its operation may be enjoined at the suit of a private individual.    McCaudless's App., 70 Pa. St. 210; Railroad's Appeal, 79 Pa. St. 257; Weidenfeld v. Railroad, 48 Fed. 615.    If built for private use its franchise may be annulled at the suit of the people.    People v. Railroad, 53 Cal. 694; State v. Railroad, 40 Ohio St. 504; Lewis on Eminent Domain (2 Ed.), sec. 171.    (4) The taking of land for water power for running any kind of mills except public mills, was held to be the taking of private property for private use in the States of Alabama, Georgia, Michigan, New York, Vermont and West Virginia.    The courts of Georgia and some other States hold the law illegal even to public gristmills. 1 Lewis on Eminent Domain (2 Ed.), sec. 180, pp. 452-5.    Sawmills and gristmills, which are regulated by law and obliged to serve the public, are undoubtedly a public use.    But as respects all other kinds of mills, although they may be public benefits, they are not a

public use within the meaning of the Constitution. 1 Lewis on Eminent Domain (2 Ed.), pp. 455-8; Burnham v. Thompson, 35 Iowa 421; Grammell v. Potter, 6 Iowa 548; Venard v. Cross, 8 Kans. 248; Harding v. Funk, 8 Kans. 323; Jordan v. Woodard, 40 Me. 323. The Legislature, section 1341, Revised Statutes 1899, authorized electric light companies, gas companies and water companies to use the public streets by permission of the city authorities under such reasonable regulations as such authorities might prescribe. In the same connection sections 1342 to 1348 authorize the water company mentioned in section 1341, to go out of the city and condemn land for its pipe line, but this right was withheld from electric light companies, showing clearly that it was not the intention of the Legislature that these companies should have this power. The expression of one thing excludes another. State ex rel v. Withrow, 133 Mo. 500; State v. Gretzner, 134 Mo. 513. (5) Even if it should be determined that appellant's business is a public use, appellant can not maintain this proceeding because it is very evident that the Legislature did not intend to extend the act to anything but public gristmills, and possibly sawmills, which by custom served the public. The Milldam Act, chapter 113, Revised Statutes 1889, and an act entitled "Mills and Millers," chapter 114, Revised Statutes 1889, have come down to us without material change since 1855. Both of these acts relate to the same subject, and should be read together. (6). The Milldam Act can not be made to apply to a mill already built. Sec. 7020, R. S. 1889. No length of time would render lawful a public nuisance. Huffman v. Vaughan, 72 Mo. 465. Section 7014, Revised Statutes 1889, provides that the dam shall be built after the order of court, not before.

VALLIANT, J.—Plaintiff is a private corporation organized under article 8, chapter 42, Revised Statutes 1889, for the purpose of owning and operating gas

works, electricity works and waterworks to furnish light, power and water to Joplin, Webb City, and neighboring towns and their inhabitants for ''hire and compensation.'' By this suit the plaintiff seeks to exercise the right of eminent domain as it is conferred in chapter 113, Revised Statutes 1889 (now chap. 131, R. S. 1899) entitled ''Mills and Milldams.''

Upon the filing of the petition a writ of *ad quod damnum* issued and proceedings were had as in conformity to the requirements of that chapter. Upon the final hearing the court quashed the proceedings and dismissed the suit upon the ground as recited in the judgment, ''that the court finds that the petitioner is not entitled, under the pleadings and evidence, under the Constitution and laws of this State to exercise the powers of eminent domain and erect and maintain the dam in question for the purpose of furnishing electric lights to the city of Joplin or other municipalities or their inhabitants.'' The plaintiff appeals from that judgment.

There were some disputed questions of fact as to the damage that would be done the owners of land, and the effect on the health of the people in the vicinity caused by maintaining the dam, also concerning plaintiff's alleged contractual duty to the city of Joplin to furnish light and water. But in the view we take of the main question in the case it is unnecessary to go into those questions.

Plaintiff's purpose is to maintain a dam across Shoal Creek in Newton county on land owned by it, on both sides of the creek, to gain a water power to run its works to manufacture gas and electricity to be transmitted to Joplin, Webb City, and other cities in the vicinity and their inhabitants; the consequence of which will be to obstruct the flow of the creek, flood adjacent lands and inflict damage on the property-owners in the vicinity, compensation for which the plain-

tiff offers to pay when the amount is duly ascertained, as in the statute above mentioned is prescribed.

The vital question in this case is, does our statute which authorizes a person to exercise the right of eminent domain to condemn private property for the purpose of building and maintaining a milldam, embrace in its purpose a private business corporation organized to furnish light and water for pay to neighboring cities and their inhabitants?

In going straight to this question we may for the purpose of this case concede, without so deciding, that the use of property in furnishing light and water to a city is a public use. But it is not every corporation whose occupation is that of serving the public that is entitled to condemn and take or damage private property for its use. Many corporations whose whole revenues are derived in serving the public have no right of eminent domain.

Street railroad companies serve the public and their machinery and appliances are public utilities. If the plaintiff in this case may exercise the right of eminent domain to enable it to generate electricity for the purposes it has in view, a street railroad company may condemn, take and damage private property, under the terms of the statute in question, to enable it to utilize a water power anywhere in the State to transmit the power by wire to the city to run its street cars, and in such case the railroad company's dam would be as appropriately called a milldam, as the dam that the plaintiff in this case would erect.

The right of eminent domain does not come merely from the character of the business, but arises only in legislative grant, and is to. be exercised only in the manner prescribed by law. [Sec. 21, art. 2, Constitution.]

It is a sovereign power to be used only by the sovereign or by one on whom the sovereign has conferred

it for a particular use, and when conferred it is to be treated as an invasion of the rights of the individual whose property is to be taken and therefore to be strictly construed. The Legislature has authorized the taking of private property without the consent of the owner for some public uses, but not for all.

The statute we now have to construe authorizes the taking and damaging of private property for the purpose of building and maintaining a milldam to gather water power to run a public mill. Are the plaintiff's works of the character that constitute them a public mill within the meaning of that act?

A learned text-writer, laying down the rule that contemporary history is to be consulted in construing a statute, quotes from the Supreme Court of the United States in United States v. Railroad, 91 U. S. 72: "Courts, in construing a statute, may with propriety recur to the history of the times when it was passed; and this is frequently necessary, in order to ascertain the reason as well as the meaning of particular provisions in it." [Black on Interp. of Laws, p. 212.]

The statute in reference to mills and milldams first appears in our books in the form of an act approved December 3, 1822. The provisions of that act have been brought forward with little change and have appeared in every revision from and including that of 1825 down to that of 1899.

If we go back to 1825 and think about mills and milldams as applicable to the necessities of the country then, we can have no doubt as to the kind of mills the Legislature had in mind when it enacted this law. Gristmills were the only kind the people of this State in those early days had any practical familiarity with; when they used the word "mill" it was in that sense. And that is the original and only natural meaning of the word; the signification that is derived from its modern application to various manufacturing ma-

chines is artificial.   It is like the appropriation of the word "industrial" in an exclusive sense to manufacturing occupations, as if it distinguished them from agricultural or other pursuits.   It is an artificial and arbitrary use of the word.   Webster thus defines the word "mill":   "An engine or machine for grinding or comminuting any substance, as grain, by rubbing or crushing it between two hard, indented surfaces, generally of stone or metal. . . ." ·

"In modern usage, the term 'mill' includes various other machines and combinations of machinery, which resemble the flouring mill, to which the term was first applied, not in its circular or grinding action, but in the more general one of transforming some raw material by mechanical processes into a state or condition for use."   That is substantially the definition given also in 20 Am. and Eng. Ency. of Law, 674.

But even in the modern application of the word it is not used to include all kinds of machinery; we hear the terms "saw mill" "cotton mill," "woolen mill," "silk mill," but we never hear gas mill, electricity mill; and we never hear gasworks, or electricity works or waterworks called "mills."   The statute, however, uses the term "mill and other machinery," but that term in that connection does not include all manufacturing machinery.   "Mill and other machinery" as there used, means mill and other machinery *ejusdem generis*.   The same learned text-writer from whom we have above quoted says:   "The words of a statute are to be construed with reference to its subject-matter. If they are susceptible of several meanings, that one will be adopted which best accords with the subject to which the statute relates."   [Black on Interpretation of Laws, p. 125.]   By "other machinery," therefore, the statute means machinery that is appurtenant to the mill proper, as bolting machinery, grain elevators, etc.

There are no express words in that chapter requiring the mill that the dam to be erected is to run,

shall be a public mill, yet that is taken for granted, as though the Legislature deemed it unnecessary to say that the power given to one man to take or damage the property of another was not given him for his private use. That chapter concerns only the exercise of the power of eminent domain to enable one to build and maintain a dam to run a public mill,; it confers the right on conditions and prescribes the terms on which it may be acquired, and used, and the conditions on which the dam may be maintained, but the Legislature reserved to the next succeeding chapter, which was of twin origin and is of equal age with the preceding one, the function of defining what the term "public mill" means and how it should be operated.

Revised Statutes 1825, page 591: "All mills now in operation, or which may hereafter be put in operation, within this State, for grinding wheat, rye, corn, or other grain, and which shall grind for toll, shall be deemed public mills."

Revised Statutes 1835, page 404: "All gristmills which grind for toll, are hereby declared public mills.

"Every water gristmill that has heretofore or shall hereafter be built and established on any watercourse, by authority of any statute or lawful order of any court is hereby declared to be a public mill, and shall grind for customers at least four days in each week."

Substantially the same definition is contained in each revision down to that of 1889 when it is in these words: "Sec. 7024.—*Public Mills.* All gristmills which grind for toll, and all water gristmills, built on any watercourse by authority of any statute or order of any court, are hereby declared to be public mills, and shall grind for customers at least four days in each week" (same sec. 8756, R. S. 1899). Then follow in each volume regulations of tolls and the manner of conducting the operation of the mill. That is the

definition of a public mill in reference to the subject of obstructing a watercourse as approved by this court in McIntosh v. Rankin, 134 Mo. 340.

The statute just quoted is of contemporaneous legislation relating to the same subject as that contained in the chapter conferring the right to condemn property for the purpose of building and maintaining a dam, and the mills there referred to and defined are the only mills for the building of which the right of eminent domain is conferred.

Not only is the machinery of plaintiff not a mill, but the manner of conducting its business, its compensation for its service, its dealing with the public, are all matters which, if under any statutory regulation at all, are not regulated by the terms of the statute now under discussion.

There are other subjects discussed in the briefs, but as we are satisfied that plaintiff's works do not come within the meaning of the term "mill and other machinery" as contemplated in the statute under which the plaintiff seeks to exercise the right of eminent domain, there is no necessity for further discussion. The judgment of the circuit court is affirmed. All concur.