FRANK STURGES, Appellee, *vs.* THE CITY OF CHICAGO,
Appellant.

*Opinion filed December 15, 1908.*

1. CONSTITUTIONAL LAW—*objections by one whose rights are
not affected are not entertained.* Courts do not entertain objec-
tions to the constitutionality of a statute unless the objection is
made by one whose rights may have in some way been affected.

2. SAME—*courts will not so construe a statute as to make it
unconstitutional unless unavoidable.* Courts will not construe a
statute so as to render it unconstitutional if any other reasonable
construction can be adopted which will make the act effective.

3. SAME—*courts will not assume that legislature intended ab-
surd consequences.* Courts will not adopt a particular construction
of a statute which will lead to absurd consequences unless the lan-
guage of the statute will admit of no other reasonable construction.

4. SAME—*Mobs and Riots act does not impose liability regard-
less of where mob assembled.* The Mobs and Riots act of 1887 is
not unconstitutional upon the alleged ground that it permits a re-
covery against a city or county for damage done by mob or riot
even though the property destroyed may be in another city or
county than the one where the mob assembled or the riot occurred,
since the act does not so provide and will not be construed as hav-
ing that effect.

5. SAME—*Mobs and Riots act not invalid because it imposes li-
ability regardless of negligence.* The Mobs and Riots act of 1887
is not unconstitutional because it imposes a liability on a city or
county without regard to whether the city or county or its officers
were guilty of negligence or had power to disperse the mob or sup-
press the riot, since the liability imposed by the act is not based
upon any element of negligence, but is imposed under the police
power of the State as a matter of public policy.

APPEAL from the Circuit Court of Cook county; the
Hon. S. C. STOUGH, Judge, presiding.

ROBERT N. HOLT, CLYDE L. DAY, and EMIL C. WET-
TEN, (EDWARD J. BRUNDAGE, Corporation Counsel, of
counsel,) for appellant:

Due process of law requires that a party be given an
opportunity to be heard on every question of fact or liabil-
ity. *Railway Co. v. Lackey,* 78 Ill. 55; *Zeigler* v. *Rail-*

*road Co.* 58 Ala. 594; *Hager* v. *Reclamation District,* 111 U. S. 701; *Jensen* v. *Railway Co.* 6 Utah, 253; *Wadsworth* v. *Railway Co.* 18 Colo. 600; *Cateril* v. *Railway Co.* 2 Idaho, 540; *Bielenberg* v. *Railway Co.* 8 Mont. 271; *Thompson* v. *Railway Co.* 8 id. 279; *Schenck* v. *Railway Co.* 5 Wyo. 430; *East Kingston* v. *Tolle,* 48 N. H. 57; *Stoudenmire* v. *Brown,* 48 Ala. 699; *Street* v. *New Orleans,* 32 La. Ann. 577.

Due process of law requires only what is demanded by the usual general law, according to the nature of the particular matter in hand. It will not tolerate unusual or arbitrary actions. *Holden* v. *Hardy,* 169 U. S. 366; *Davidson* v. *New Orleans,* 96 id. 97; *Bank* v. *Okely,* 4 Wheat. 235; *Board of Education* v. *Bakewell,* 122 Ill. 339.

Laws inflicting penalties should operate equally on all citizens equally situated. *Bailey* v. *People,* 190 Ill. 28.

The "equal protection of the law" covers privileges conferred as well as liabilities imposed. *Hayes* v. *Missouri,* 120 U. S. 68.

Where the void provisions in a statute cannot be eliminated without affecting the remaining portions, the whole statute becomes void. Cooley's Const. Lim. 178, 179.

BULKLEY, GRAY & MORE, for appellee:

The law in question has been held constitutional, as not violating any provision of the fourteenth amendment to the constitution of the United States or of section 22 of article 4 of the constitution of this State, and the rule *stare decisis* applies. *Soap Co.* v. *Chicago,* 234 Ill. 314; *Chicago* v. *Cement Co.* 178 id. 372; *Pennsylvania Co.* v. *Chicago,* 81 Fed. Rep. 317; *Chicago* v. *Pennsylvania Co.* 119 id. 497; *Darlington* v. *Mayor,* 31 N. Y. 164; *County of Allegheny* v. *Gibson,* 90 Pa. St. 397; *Greenup* v. *Stoker,* 3 Gilm. 202.

The act in question is the exercise of the police power of the State over the municipality. *Electric Imp. Co.* v.

*San Francisco,* 45 Fed. Rep. 593; *Reduction Co.* v. *Reduction Works,* 199 U. S. 306; *Gardner* v. *Michigan,* 199 id. 325; *Jones* v. *Brim,* 165 id. 180; *Railway Co.* v. *Mathews,* 165 id. 1; *Railway Co.* v. *Beckwith,* 129 id. 27; Sedgwick on Construction of Statutes, (2d ed.) 434.

Courts will not so construe a statute as to render it unconstitutional when by a reasonable construction it can be rendered legal. *People* v. *Peacock,* 98 Ill. 172; *Newland* v. *Marsh,* 19 id. 376; *People* v. *Harrison,* 191 id. 257; *Soap Co.* v. *Chicago,* 234 id. 314; *Chicago* v. *Cement Co.* 178 id. 372; *Pennsylvania Co.* v. *Chicago,* 81 Fed. Rep. 317; *Jones* v. *Brim,* 165 U. S. 180; *Railway Co.* v. *Beckwith,* 129 id. 27.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case commenced by Frank Sturges, the appellee, against the city of Chicago, the appellant, in the circuit court of Cook county, to recover damages for an injury to the property of the appellee caused by a mob or riot in the city of Chicago on the 16th day of July, 1903. A jury was waived, and the cause, by agreement of the parties, was tried by the court, and resulted in a finding and judgment in favor of the plaintiff for the sum of $702, and the city has prosecuted this appeal.

The declaration contained one count, and alleged that the plaintiff was the owner of a six-story brick building located at the corner of Green and Congress streets, in the city of Chicago; that on the 16th day of July, 1903, during a strike, a large mob or riot of more than twelve persons assembled in the vicinity of said building, and with stones, brickbats and other missiles broke and destroyed a large quantity of plate glass in the said building of the value of $1048; that the destruction and injury to said plate glass and said building were not occasioned by the negligence or wrongful act of the plaintiff or his tenant; that the plaintiff

used all diligence to protect his property from being destroyed or injured, and averred that notice of the injury to his property was given to the city on the third day of August, 1903. The general issue was filed, and on the trial defendant submitted certain propositions in writing which challenged the constitutionality of the said statute on the ground that it was in conflict with the State and federal constitutions, and particularly in conflict with section 22 of article 4 and sections 2 and 11 of article 2 of the State constitution, and in conflict with the provisions of the fifth amendment and the first section of the fourteenth amendment to the constitution of the United States, which propositions were all marked "refused" by the court.

The suit is based upon an act of the legislature of this State entitled "An act to indemnify the owners of property for damages occasioned by mobs and riots," approved June 15, 1887, in force July 1, 1887, (Laws of 1887, p. 237,) and it is conceded by the appellant if said act is constitutional appellee was entitled to recover in the court below, and the judgment of that court should be affirmed.

Section 1 of the act of 1887 reads as follows: "Be it enacted by the People of the State of Illinois, represented in the General Assembly: That whenever any building or other real or personal property, except property in transit, shall be destroyed or injured in consequence of any mob or riot composed of twelve or more persons, the city, or if not in a city then the county in which such property was destroyed, shall be liable to an action by or in behalf of the party whose property was thus destroyed or injured, for three-fourths of the damages sustained by reason thereof."

The constitutionality of this act was before this court in *City of Chicago* v. *Manhattan Cement Co.* 178 Ill. 372, and in *Dawson Soap Co.* v. *City of Chicago,* 234 id. 314, and it was there sustained. It is, however, contended by appellant that the act should be held unconstitutional in this case upon grounds other than those upon which it is said the

237—4

former decisions of this court were based and for reasons which were not then presented to the court either in the briefs filed by counsel or upon oral argument. Counsel for the appellant now contend that said act is unconstitutional for the following reasons: First, because the act makes the location of the property destroyed or injured, and not the place where the mob assembled or the riot occurred, the criterion as to who should be punished; and second, because the act makes the liability of the city or county conclusive from the fact, alone, that the property was destroyed or injured within the limits of the city or county, and wholly regardless of the fact whether the city or county, or its officers, were guilty of negligence or had the power to disperse the mob or suppress the riot.

To emphasize the first position of the appellant, it is said in the brief filed by counsel on its behalf, a mob may assemble or a riot occur in one city or county, or even in a foreign State, and by the use of dynamite or cannon destroy or injure property in another city or county or in this State, and that the city or county "in which such property was destroyed or injured" may be held liable under the statute although the city or county where the destruction or injury to the property occurred was powerless to disperse the mob or suppress the riot, as the mob or rioters were beyond the limits of the city or county. Whether a city or county in which a mob assembled or a riot occurred would be liable for property destroyed or injured in an adjoining city or county, under the circumstances suggested by counsel for appellant, need not now be discussed or decided as that sort of a case is not now before the court, and the law is well settled that courts do not entertain objections to the constitutionality of a statute unless the objection is made by one whose rights have been in some way affected. (*Neifing v. Town of Pontiac,* 56 Ill. 172; *People v. McBride,* 234 id. 146.) The case here made by the declaration and by the proofs by the appellee brings the case

clearly within the provisions of the statute,—that is, the property in question was destroyed or injured by a mob or riot in the city where the mob assembled or the riot occurred.

It is fundamental that the courts will not construe a statute so as to make it unconstitutional if any other reasonable construction can be placed upon it which will make it effectual. (*Newland* v. *Marsh*, 19 Ill. 376; *People* v. *Peacock*, 98 id. 172.) To hold that the statute in question should be so construed as to make a city or county liable for the destruction or injury of property caused by a mob or a riot outside of the limits of the city or county would be to attribute to the legislature the doing of an unreasonable and absurd thing and something which the legislature clearly could not have contemplated. This the courts will never do, unless the language of the statute is so clear and certain in its terms that no other reasonable conclusion from the reading thereof can be reached. And even when the literal enforcement of a statute will result in inconvenience and great hardship and lead to consequences which are absurd, the courts will presume no such consequences were intended and adopt a construction which is, in its consequences, in accordance with reason and which will promote the ends of justice and avoid the absurdity. In *People* v. *Harrison*, 191 Ill. 257, the court, on page 267, said: "When the literal enforcement of a statute would result in great inconvenience and cause great injustice, and lead to consequences which are absurd and which the legislature could not have contemplated, the courts are bound to presume that such consequences were not intended, and adopt a construction which will promote the ends of justice and avoid the absurdity." To the same effect were *People* v. *City of Chicago*, 152 Ill. 546, and *Crane* v. *Chicago and Western Indiana Railroad Co.* 233 id. 259. We think it clear, therefore, from a consideration of the statute upon which the cause of action in this case is based, said statute should

be so construed as not to impose a liability upon a city or county for property destroyed or injured by a mob or riot assembling or occurring outside of the limits and beyond the control of the city or county in which the property was destroyed or injured. If the statute is given such construction, then the objection urged by the appellant against its constitutionality is removed. The Supreme Court of the State of New York, and the Supreme Courts of the State of Pennsylvania and other States in the Union, have each held a statute substantially in the language of our statute constitutional. (*Darlington* v. *State of New York*, 31 N. Y. 163; *County of Allegheny* v. *Gibson*, 90 Pa. St. 397; 35 Am. Rep. 670.) Our conclusion therefore is that the first contention of the appellant cannot be sustained.

The second contention of the appellant is based upon the supposition that the statute was enacted to guard against injury to the property of the citizen caused by the negligence of the city or the county in which its destruction or injury takes place, in failing to disperse a mob or suppress a riot. The liability imposed by statutes of this kind is not based by the legislature or sustained by the courts upon the theory that the city or the county in which the property is destroyed or injured has been guilty of negligence, as the element of negligence is not the basis upon which the liability rests, but such statutes are enacted by virtue of the police power of the State and are sustained upon the ground of public policy, and have been universally enforced by the courts without regard to the hardship which might arise by reason of their enforcement in particular cases. The question raised in appellant's second contention was raised and passed upon by this court adversely to the contention of appellant in the case of *City of Chicago* v. *Manhattan Cement Co. supra,* and was there set at rest. On page 379 of the opinion in that case the court said: "Except that of the State of Maryland, all of the statutes of this character, so far as we can ascertain, like our own, fix the liability of

the municipality without reference to its ability or exercise of diligence to prevent the destruction, and that feature has not been considered by any of the courts passing upon the question, as an objection to their validity." And the court in that case quoted with approval the following excerpt from the *Gibson case* (p. 378): "Under our political system the State grants a portion of its sovereignty to certain municipalities. It clothes them with certain of its powers and exacts from them in return the performance of certain duties. Among the powers granted is that of maintaining a police force. Among the duties exacted is that of preserving the public peace. There is an implied contract between the State and every municipality upon which it bestows a portion of its sovereignty, that such municipality shall preserve the public peace and maintain good order within its borders. The State lends its aid when the local authorities are overborne and a call for assistance is made in the manner pointed out by law. But it is entirely within the power of the sovereign to make such communities responsible for the preservation of order. The privileges conferred must be taken with such burdens as the law-making power chooses to annex thereto." And again, on page 379: "It may seem a harsh rule to hold a community responsible for the effects of mob violence, which, apparently at least, they had no power to prevent, yet not more so than to hold every inhabitant of the English hundred liable for a robbery of which he knew nothing and had no means of arresting. *In both cases it is a police regulation.* It is based upon the theory that with proper vigilance the act might and ought to have been prevented." And from the *Darlington case,* on page 378: "It cannot be doubted but that the general purposes of the law are within the scope of legislative authority. The legislature has plenary power in respect to all subjects of civil government which they are not prohibited from exercising by the constitution of the United States or by some provision or arrangement of the

constitution of this State. This act proposes to subject the people of the several local divisions of the State, consisting of counties and cities, to the payment of damages to property in consequence of any riot or mob within the county or city. The policy upon which the act is framed may be supposed to be to make good at the public expense the losses of those who may be so unfortunate as, without their own fault, to be injured in their property by acts of lawless violence of a particular kind which it is the general duty of the government to prevent, and further, and principally, we may suppose, to make it the interest of every person liable to contribute to the public expense to discourage lawlessness and violence and maintain the empire of the laws established to preserve public quiet and social order. These ends are plainly within the purposes of civil government, and, indeed, it is to maintain them that governments are instituted, and the means provided by this act seem to be reasonably adapted to the purposes in view."

We have gone over the questions involved in this case with much care, and have reached the same conclusion which was reached in *City of Chicago* v. *Manhattan Cement Co. supra,* where, on page 377, this court said: "Statutes similar to ours have been in force in England, as well as in several of the States in this country, for many years, and have uniformly been upheld by the courts. The constitutional right of legislatures to enact such laws under our form of government has been frequently challenged in courts of last resort, and our attention is called to no case denying that authority."

Finding no reversible error in this record the judgment of the circuit court will be affirmed.

*Judgment affirmed.*