**PROTECTION MUTUAL INSURANCE COMPANY, Appellant,**

v.

**KANSAS CITY, Missouri, Respondent.**

No. 57445.

Supreme Court of Missouri,
Division No. 1.

Jan. 14, 1974.

William J. Marsh, Kansas City, for appellant; Popham, Popham, Conway, Sweeny & Fremont, Kansas City, Robins, Davis & Lyons, Minneapolis, Minn., of counsel.

Aaron A. Wilson, City Counselor, Charles A. Lewis, Associate City Counselor, Kansas City, for respondent.

HIGGINS, Commissioner.

Appeal (taken prior to January 1, 1972) from dismissal of plaintiff's action for $111,948.88, damages to property.

Plaintiff alleged: that defendant Kansas City was a municipal corporation, organized according to law, with a population since 1870 in excess of 30,000 persons; that plaintiff was a corporation engaged in insuring property of others against loss caused by fire, riot, civil commotion, and other perils; that by contract or policy of insurance, plaintiff insured the property of Parkview-Gem, Inc., used in its retail businesses at 2818 East 27th Street and 3207 Prospect in Kansas City, Missouri; that on April 10, 1968, a great number of persons, more than three, unknown to plaintiff, assembled in groups and mobs in Kansas City for purposes of committing acts of force and violence, damage and destruction against persons and property of others and civil commotion and, while so assembled, committed acts of violence, damage and destruction and civil commotion in a violent, unlawful, tumultuous, and riotous manner to the terror and disturbance of peaceful citizens and against the peace and against the property of Parkview-Gem, Inc., as well as the property of others in Kansas City, causing the property of Parkview-Gem, Inc., to be burned, damaged and destroyed in the amount of $125,088.75; that

plaintiff paid such sum to Parkview-Gem, Inc., and became subrogated to all rights of Parkview-Gem, Inc.; that plaintiff recovered $13,139.87 as salvage, and its net loss resulting from the riotous and unlawful acts was $111,948.88, the amount of plaintiff's prayer.

Defendant Kansas City moved for dismissal of plaintiff's petition on the ground it failed to state a claim or cause of action upon which relief can be granted.

The trial court sustained defendant's motion to dismiss and dismissed plaintiff's petition.

Appellant contends that the Legislature, by its original enactment in 1881 on the subject of damages by riot, intended to effect a change in the law by providing a means to compensate a person whose property is damaged or destroyed by riot and mob violence in any city or town of over twenty-five thousand inhabitants, without limitation by form of governmental organization any such city chooses to adopt.

Respondent does not question the sufficiency of plaintiff's petition except as to applicability of the Act to Kansas City. It is respondent's position that the current statute on the subject, Section 537.140, RSMo 1969, V.A.M.S., applies exclusively and specifically to cities of the first or second class and not to Kansas City, a constitutionally chartered city.

Section 537.130, RSMo 1969, V.A.M.S., provides: "Any person or persons forming a part of an unlawful or riotous assemblage shall be liable for any damage to person or property caused by the acts of such assemblage, or of any person or persons unlawfully connected therewith."

Section 537.140, supra, provides: "Any city of the first class or of the second class in which such acts shall be committed shall be liable to the person or persons whose property shall be destroyed or injured thereby, for the value of the property so destroyed, or the damage thereto, and the

same may be recovered by suit at law, without joining any person or persons with said city or town as defendants in said suit."

Kansas City has had a population in excess of 30,000 inhabitants since 1870; it has been a constitutional charter city since 1889.

If the law applicable to this case was limited to Section 537.140, supra, Kansas City's position would be sound because that section, by its reference to first or second class cities, has no application to a city operating under a charter form of government. Leoffler v. Kansas City, 485 S.W. 2d 633 (Mo.App.1972). However, an examination of the history of Missouri's enactments on the subject of a municipality's liability for damages by riots places Kansas City in a different position.

An Act entitled "Cities, Towns and Villages: Riot, Damage By" was enacted by the 31st General Assembly, was approved March 26, 1881, by Governor Thomas J. Crittenden, and provides:

"Section 1. Any person or persons forming part of an unlawful or riotous assemblage shall be liable for any damage to person or property caused by the acts of such assemblage, or of any person or persons unlawfully connected therewith.

"Sec. 2. The city or town in which such acts shall be committed, shall be liable to the person or persons whose property shall be so destroyed or injured thereby, for the value of the property so destroyed, or the damage thereto, and the same may be recovered by suit at law, without joining any person or persons with said city or town as defendants in said suit: *Provided*, the provisions of this section shall only apply to cities and towns having a population of over twenty-five thousand inhabitants * * * ." Laws 1881, pp. 68, 69.

There can be no doubt that the Act provides for recovery from a city only for destruction or damage to property and not

for personal injury; and that it applies to all cities with a population of over twenty-five thousand inhabitants without limitation or exclusion as to class or charter organization. Under Section 2, size of city alone, rather than classification or form of organization, charter or otherwise, determines applicability of the Act, and Kansas City with a population in excess of twenty-five thousand was at all times subject to that provision.

Examination of Laws 1883, Laws 1885, Laws and Ex.Sess. 1887, and Laws 1889 discloses no legislative action with respect to Section 2, Laws 1881, supra, from its original enactment until its inclusion by the revision committee as Section 1767 in RSMo 1889, pursuant to Article 4, Section 41, 1875 Constitution. Section 1767, supra, although citing Laws 1881, p. 69, as its source, differs from its purported source and reads: "Any city of the first class or of the second class in which such [riotous] acts shall be committed, shall be liable to the person or persons whose property shall be destroyed or injured thereby, for the value of the property so destroyed, or the damage thereto, and the same may be recovered by suit at law, without joining any person or persons with said city or town as defendants in said suit. (Laws 1881, p. 69)." Subsequent revisions of Revised Statutes of Missouri have carried forward the riot provision as it read in Section 1767, RSMo 1889. See §§ 6106 (1899), 9550 (1909), 8673 (1919), 3272 (1929), 3662 (1939), 537.140 (1949), 537.140 (1959), 537.140 (1969).

■ Nowhere does it appear by legislative enactment, resolution, explanation or record of any kind how or why Laws 1881, page 69, became revised in the form of Section 1767, RSMo 1889, and continued in that form to the present with the result that its original application to all cities and towns became limited to cities of the first and second class; or how or why its original limitation of application to cities of over twenty-five thousand persons was

changed. Absent a legislative act amending the section, statute revisers have no authority to change the substantive meaning and application of a law or its purpose and intent, and any subsequent revision purporting to effect such a substantive change is ineffective for that purpose. In such case, the law as originally enacted must be construed and applied to accomplish the original legislative intent and purpose. Art. 3, §§ 21 and 28, Missouri Constitution 1945, V.A.M.S.; Art. 4, §§ 33 and 34, Missouri Constitution 1875; § 1.120, RSMo 1969, V.A.M.S.; Montague v. Whitney, 298 S.W.2d 461, 465[4] (Mo. App.1957).

■ As recognized by the 1889 revisers, "The committee do not pretend to claim that the work is free from typographical errors. In a work of this magnitude, errors will, almost of necessity, occasionally occur in defiance of the most extraordinary care and precaution. We can only say, that if such do occur, the references are such as to the origin and history of each section, that any man of average intelligence can readily detect them, and read the section understandingly." Preface, p. VI, RSMo 1889. Under Sections 3.080 and 3.090, RSMo 1969, V.A.M.S., even when revised statutes are proofread and compared to the original rolls of all laws and certified as true copies, which RSMo 1889 were not, such revised statutes are no more than *prima facie* evidence of such statutes. In construing the application of a statute, it is appropriate to consider its history, the presumption of the Legislature's knowledge of the law, the surrounding circumstances and the ends to be accomplished. St. Louis Southwestern Railway Co. v. Loeb, 318 S.W.2d 246, 252[1] (Mo. banc 1958); Southwest Missouri Light Co. v. Scheurich, 174 Mo. 235, 73 S.W. 496, 497 (1903).

■ Accordingly, the original enactment in this case, Laws 1881, p. 69, is the best evidence of the Legislature's purpose and

intent; and here it is apparent that the Legislature intended to provide a remedy where none existed, by enacting a law under which to compensate a person whose property was damaged by riot within any city of over twenty-five thousand population. Subsequent revisions purporting, without enactment, to change the substantive law, may not be utilized to defeat this intent and purpose. Langston v. Canterbury, 173 Mo. 122, 73 S.W. 151, 152 (1903); Bowen v. Missouri Pac. Ry. Co., 118 Mo. 541, 24 S.W. 436 (1893). See also City of Chicago v. Sturges, 222 U.S. 313, 324, 32 S.Ct. 92, 56 L.Ed. 215 (1911); Sturges v. City of Chicago, 237 Ill. 46, 86 N.E. 683 (1908).

Respondent cites Section 6606, RSMo 1889, which provided in part: "All acts of a general nature, revised and amended and re-enacted at the present session of the general assembly * * * shall be taken and construed as repealing all prior laws relating to the same subject," to argue that inclusion of Section 1767, RSMo 1889, now Section 537.140, RSMo 1969, V.A.M. S., in the 1889 revision repealed Section 2, Laws 1881, p. 69.

■ Section 6606, supra, referred only to session or revision acts of the 1889 Legislature; and only by a revision bill of the 1889 Legislature would a prior law on the same subject be repealed. It already has been stated that no action was taken with respect to Laws 1881, p. 69; and mere placement of Section 1767 in the 1889 Revised Statutes did not give it the force of law. Bowen v. Missouri Pac. Ry. Co., supra.

In similar connection, respondent also asserts that Section 1767, supra, now 537.-140, supra, should be treated as a subsequent law impliedly repealing a prior law on the same subject. This assumes that the Legislature enacted Section 1767 as it appeared for the first time in the 1889 revised statutes. As previously stated, there is no record of enactment by the Legisla-

ture of Section 1767, and the construction maxim suggested by respondent for resolution of conflicts between two different acts has no application.

■ Also along the same line, respondent asserts that even if Section 1767 was improperly injected into the 1889 revision, the question of such impropriety is now moot because it has reappeared in the same form in eight subsequent revisions and has thus repealed Laws 1881, Section 2, by implication. This also assumes that the General Assembly re-enacts the entire revised statutes after each revision, which is not the case in Missouri. See Summers, Statute Revision in Missouri, 22 Mo.L.Rev. 14 (1957). As previously stated, the Missouri Revised Statutes are simply compilations of previously-enacted session laws, and they may not vary in substance from the original bills passed by the General Assembly. When they do so vary, the Revised Statutes are only *prima facie* evidence of the law, and the original Act prevails.

■ Respondent contends since the Legislature first enacted a classification of cities in 1877, and since Laws 1881, page 69, would then apply only to some first and second class cities, the unexplained change made by the revisers by way of Section 1767, RSMo 1889, was appropriate. The change is inappropriate because it is contrary to the intent of the 1881 Act. The history of the Act shows that the limitation "to cities and towns having a population of over twenty-five thousand inhabitants" was added by the House of Representatives. The Act originated as Senate Bill 167 and it was made applicable to all cities. With the classification of cities in 1877 already in effect at the time S.B. 167 was considered, the Legislature would have provided for its exclusive application to first and second class cities had that been the Legislature's intention. Absent the enactment of such a change, the revision version of the Act by way of Section 1767, RSMo 1889, was further contrary to the

**132**

Legislature's intention because the 1877 classification of cities would encompass some as small as 20,000 inhabitants. Laws 1877, pp. 41–42, § 2. Such would enlarge the coverage of the Act and would be, perforce, both a substantive change of the Act and contrary to the legislative intent.

█ Respondent, in conclusion, suggests that there are no first or second class cities presently in Missouri to which Section 537.140 could apply and that such is a desirable situation. However, such a construction would permit circumvention of the original, unamended Act by use of charter or form of government other than city of the first or second class, is contrary to the Legislature's intent expressed in the Act of 1881, and it is reasonable to presume the Legislature intended its Act to have applicability and effect.

█ In summary, the Legislature by Laws 1881, page 69, Section 2, provided that any city or town of over 25,000 population in which a person suffers damage to property as a result of riot or mob violence shall be liable to persons so damaged. The substantive change in the law attempted by the revisers by way of Section 1767, RSMo 1889, without legislative enactment, and carried forward by subsequent revisers to Section 537.140, RSMo 1969, V.A.M.S. is contrary to the intent of the 1881 Legislature and thus without force and effect; and appellant should be permitted to proceed with its cause of action under the law as expressed by Laws 1881, pages 68 and 69.

The judgment is reversed and the cause is remanded.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.