STATE ex rel. Jeremiah W.
(Jay) NIXON, Attorney
General, Relator,

v.

Honorable Matt BLUNT, Secretary
of State, Respondent.

No. SC 86013.

Supreme Court of Missouri,
En Banc.

June 3, 2004.

Paul C. Wilson, James R. Layton, James R. McAdams, Office of the Attorney Gen., Jefferson City, for Appellant.

Terry M. Jarrett, Lowell D. Pearson, Office of the Sec. of State, Jefferson City, for Respondent.

PER CURIAM.

The request of the Attorney General for a writ of mandamus against the Secretary of State is denied at this time, without prejudice. The Secretary of State has a duty to take all necessary actions to properly submit Senate Joint Resolution 29 to the voters of Missouri at the August 3, 2004, election.

## BACKGROUND

On March 1, 2004, the Missouri Senate passed Senate Joint Resolution 29 (SJR 29), proposing to the voters of Missouri a constitutional amendment to add the following provision to article I of the Constitution of the State of Missouri:

Section 33. That to be valid and recognized in this state, a marriage shall exist only between a man and a woman.

On May 14, 2004, the Missouri House of Representatives took up and passed SJR 29 without amendment. These actions are reflected in the Senate and House journals for those respective dates.

On May 19, 2004, Governor Bob Holden issued a proclamation pursuant to article XII, section 2(b) of the Missouri Constitution calling for a special election on August

3, 2004, directing that SJR 29 be voted upon by the people at that election. On May 19, 2004, Secretary of State Matt Blunt wrote Governor Holden a letter, in response to the proclamation, stating that he had not received SJR 29 from the General Assembly and that he would take appropriate action, in accordance with chapter 116,[1] upon receipt of the joint resolution. Unstated, but clearly implied by the letter, was a refusal by the Secretary of State to take any action until receipt of the joint resolution.

On May 20, 2004, Attorney General Jay Nixon filed suit in the Cole County Circuit Court seeking to compel the Secretary of State to prepare SJR 29 to be placed upon the ballot for the August 3, 2004, election. The circuit court denied relief on May 21, 2004, holding that the Secretary of State's duties under chapter 116 were not triggered because he had not received the official copy of SJR 29 signed by the Speaker of the House and the President Pro–Tem of the Senate.

On May 21, 2004, the Attorney General sought to bring the matter directly to this Court. The request was denied without prejudice. The Attorney General then sought relief in the Court of Appeals, Western District, which was denied on May 24, 2004.

The Attorney General brought the matter again to this Court on May 24, 2004. The Court entered an order on May 25, 2004, allowing the parties to file any amended or supplemental pleadings on or before May 31, 2004, and scheduling oral argument for June 1, 2004. The order also directed the Secretary of State to "be prepared to take all steps necessary promptly to place Senate Joint Resolution 29 on the August 2004 ballot if this Court so orders."

On May 28, 2004, the presiding officers of the Missouri Senate and House of Representatives signed SJR 29, and the resolution was delivered to and received by the Secretary of State that afternoon. The Secretary of State promptly delivered a copy of the resolution to the State Auditor for the purpose of preparing a fiscal note and fiscal note summary in accordance with section 116.175. The State Auditor delivered to the Attorney General her note and summary on that same day.

## CONTROLLING CONSTITUTIONAL AND STATUTORY AUTHORITY

Article XII, section 2(a) of the Missouri Constitution provides,

Constitutional amendments may be proposed at any time by a majority of the members-elect of each house of the general assembly, the vote to be taken by yeas and nays entered on the journal.

Article XII, section 2(b) of the Missouri Constitution provides in part:

All amendments proposed by the general assembly or by the initiative shall be submitted to the electors for their approval or rejection by official ballot title as may be provided by law, on a separate ballot without party designation, at the next general election, or at a special election called by the governor prior thereto at which he may submit any of the amendments.... If possible, each proposed amendment shall be published once a week for two consecutive weeks in two newspapers of different political faith in each county, the last publication to be not more than thirty nor less than fifteen days next preceding the election. If there be but one newspaper in any county, publication for four consecutive weeks shall be made....

Section 2.010 provides:

---

1. All statutory references are to RSMo 2000 or RSMo Supp.2003, whichever is later.

The original rolls of all laws and joint and concurrent resolutions passed by each general assembly shall, immediately after the passage thereof, be deposited in the office of the secretary of state, and every bill and resolution presented to the governor for his approval, and returned by him to the house in which it originated with his approval thereon, shall, immediately after such return, be deposited by the secretary of the senate, or by the chief clerk of the house, as the case may be, in the office of the secretary of state.

Section 115.125   provides, in part:

1.   Not later than 5:00 p.m. on the tenth Tuesday prior to any election, except a special election to decide an election contest, tie vote or an election to elect seven members to serve on a school board of a district pursuant to section 162.241, RSMo, or a delay in notification pursuant to subsection 2 of this section, or pursuant to the provisions of section 115.399, the officer or agency calling the election shall notify the election authorities responsible for conducting the election.   The notice shall be in writing, shall specify the name of the officer or agency calling the election and shall include a certified copy of the legal notice to be published pursuant to subsection 2 of section 115.127. . . .

2.   Except as provided for in sections 115.247 and 115.359, if there is no additional cost for the printing or reprinting of ballots or if the political subdivision or special district calling for the election agrees to pay any printing or reprinting costs, a political subdivision or special district may, at any time after certification required in subsection 1 of this section, but no later than 5:00 p.m. on the sixth Tuesday before the election, be permitted to make late notification to the election authority pursuant to court order, which, except for good cause shown by the election authority in opposition thereto, shall be freely given upon application by the political subdivision or special district to the circuit court of the area of such subdivision or district.   No court shall have the authority to order an individual or issue be placed on the ballot less than six weeks before the date of the election, except as provided in sections 115.361 and 115.379.

Section 116.160.1   provides, in part:

If the general assembly adopts a joint resolution proposing a constitutional amendment or a bill without a fiscal note summary, which is to be referred to a vote of the people, after receipt of such resolution or bill the secretary of state shall promptly forward the resolution or bill to the state auditor.

Section 116.240   states:

Not later than the tenth Tuesday prior to an election at which a statewide ballot measure is to be voted on, the secretary of state shall send each election authority a certified copy of the legal notice to be published.   The legal notice shall include the date and time of the election and a sample ballot.

## ANALYSIS

■  There is no dispute that article XII, section 2(b) of the constitution grants to the Governor the power to call for a proposed constitutional amendment to be submitted to the people at a special election prior to the next general election. The focus of the litigation below was that the Secretary of State had not yet received from the legislature the original copy of the resolution.

The Secretary of State was correct that his statutory duties regarding the placement of any proposed constitutional amendment on the ballot are not finally

triggered until his "receipt" of the original document. *Section 116.160.* Although it may be clear from the Senate and House Journals that any particular resolution has passed prior to the time of receipt, neither of those documents can attest to the true and correct text of the resolution. Section 2.010 requires that the Secretary of the Senate or the Chief Clerk of the House deposit in the office of the Secretary of State any joint resolution "immediately after the passage thereof." This act finally triggers the Secretary of State's statutory duties to prepare the resolution to be placed upon a ballot. *See, Protection Mut. Ins. Co. v. Kansas City,* 504 S.W.2d 127, 130 (Mo.1974). Accordingly, the circuit court and the Court of Appeals, Western District, correctly denied the Attorney General's petition because his request for a writ, as to the Secretary of State, was simply premature.

SJR 29 was delivered to the Secretary of State on May 28, 2004. Section 116.240 requires the Secretary of State to send legal notice to each election authority that includes the time of the election and a

sample ballot by the tenth Tuesday prior to the election—in this instance May 25, 2004. This Court's order of that date required that "a statement that litigation is pending concerning whether to place Senate Joint Resolution 29 on the August 2004 ballot and that the election authorities should be prepared to add such issue to such ballot if this Court so orders" be included in the Secretary of State's notice. The Secretary of State was also ordered to "be prepared to take all steps necessary promptly to place Senate Joint Resolution 29 on the August ballot if this Court so orders."

Although the Secretary of State suggests that section 116.240 may prohibit placement of this issue on the August 3, 2004, ballot, this suggestion is not well taken. No statute precludes the Secretary of State from sending an amended notice to each election authority subsequent to the tenth Tuesday before the election. Moreover, numerous statutory provisions contemplate that the ballot can be changed after the Secretary of State's ten-week notice.[2] The statutes also clearly note that

**2.** *See, e.g., sec. 115.247.2* (permitting circuit courts to order changes to the ballot after ten weeks when errors are discovered thereon); *sec.115.333* (permitting courts to order new candidates or parties onto the ballot after the ten-week deadline); *sec 115.127.3* (acknowledging that courts may remove candidates or issues after the initial ten-week deadline); *sec 116.185* (allowing identical or substantially identical ballot titles to be changed, without regard to the ten-week deadline as long as it is "before the ballot is printed") *sec 115.127.6* (permitting candidate to remove his or her name from the ballot up to six weeks before the election); *sec 115.359.1* (permitting candidates to remove their names from the ballot, without regard to the ten-week deadline, after being named as a party candidate for a different office); *sec 115.359.2* (permitting candidates to remove their names from the ballot until the sixth week before an election upon court order); *sec 115.361* (nominations to reopen if the incumbent or only candidate for

nomination dies, withdraws or is disqualified on or before the eighth week prior to a primary election); *sec 115.363.1(1)* (party committees may nominate until the fourth week before a primary election if all the party's candidates die after the last permissible day for filing); *sec 115.363.3* (party committees may nominate until the fourth week before the general election if the party candidate dies and until the sixth week before the election if the party candidate is disqualified); *sec 115.363.4* (party committees may nominate candidates for the general election if an unopposed candidate dies prior to the fourth week before the election or is disqualified prior to the sixth week before the election); *sec 115.373* (names of candidates selected by party committees to fill vacancies created by death, disqualification or withdrawal to be filed with the Secretary of state of State or the proper election authority not later than four weeks prior to the election); *sec 115.383* (requiring election authorities who are "duly

courts are to freely give authority to make changes in the ballot until six weeks before the election. *Sections 115.125.2 and 115.127.6.*

No showing has been made that the remaining statutory requirements to place SJR 29 on the August ballot cannot be met. In fact the Secretary of State, the State Auditor, and the Attorney General have all confirmed that they can fulfill their duties in an expedited manner, if necessary.

■ The Secretary of State cannot exercise the duties of his office in a manner to frustrate the Governor's constitutional authority to select the election date for the submission of this question to the people. *See, State ex rel. Upchurch v. Blunt,* 810 S.W.2d 515 (Mo. banc 1991); *Brown v. Morris,* 365 Mo. 946, 290 S.W.2d 160, 167 (1956). Nor has the Secretary of State expressly indicated that he would do so. If the Governor properly calls a special election on a proposed constitutional amendment under article XII, section 2, the special election is the only election in which the voters can consider that proposed amendment. The Governor's proclamation, pursuant to his constitutional authority, properly designated the election of August 3, 2004, for the voters to consider SJR 29.

The Secretary of State has a duty to take such actions as are necessary, in an expedited manner, to prepare SJR 29 for submission to the people of Missouri at the August 3, 2004, election in accordance with the Governor's proclamation. If any further relief is required, Rule 84.22 will be waived, and the action can be brought directly in this Court.

notified" at any time to remove or add names to ballot before printing, or by use of pasters

The Attorney General's request for a writ of mandamus is denied, without prejudice.

WHITE, C.J., WOLFF, STITH, and TEITELMAN, JJ., concur.

BENTON, J., concurs in separate opinion filed.

PRICE, J., concurs in opinion of BENTON, J.

LIMBAUGH, J., concurs in part and dissents in part in separate opinion filed.

DUANE BENTON, Judge, concurring.

The Constitution authorizes the General Assembly to provide by law how amendments are submitted to the voters. *Mo. Const. art. XII, sec. 2(b).* The legislature has declared when courts may not order issues on the ballot:

**No court shall have the authority to order an individual or issue be placed on the ballot less than six weeks before the date of the election, except as provided in sections 115.361 and 115.379.**

*Section 115.125.2 RSMo Supp.2003.*

The legislature enacted this bright line in 2003, in its last review of election laws. *H.B. 511, 2003 Mo. Laws 608,* enacting *115.125.2* (last sentence). This amendment established the law in Missouri for "last-minute" changes to the ballot in response to the general elections in Minnesota and New Jersey in 2002. *See also S.B. 29, 2003 Mo. Laws 1207* (introduced Dec. 1, 2002, vetoed July 9, 2003) (legislature would have prohibited courts from ignoring time limits for withdrawal of candidates).

after printing).

The six-week deadline is reasonable because absentee ballots are to be available by then, *section 115.281.1;* candidate withdrawals and disqualifications may occur until then, *sections 115.127.6, 115.359.2, 115.363, 115.379.2;* and local issues may be added until then, *section 115.125.2* (first sentence).

If the acts required by the election law would be completed less than six weeks before the election, I would agree with Judge Limbaugh. However, because the Governor constitutionally called a special election over 10 weeks before the election, because all four statewide officers involved agree that all required acts will be completed more than six weeks before the election, and because local election authorities had notice 10 weeks before the election, I concur in the per curiam opinion.

STEPHEN N. LIMBAUGH, JR.,
Judge, concurring and dissenting.

I concur in the opinion of the Court that the attorney general's request for a writ of mandamus is denied. The Court correctly holds that under section 116.160, RSMo 2000, "The [s]ecretary of [s]tate was correct that his statutory duties regarding the placement of any proposed constitutional amendment on the ballot are not finally triggered until his 'receipt' of the original document." I would add that not only does section 116.160 include a "receipt" requirement, but also that it affords the secretary of state 20 days thereafter for the preparation of a ballot summary, and that mandamus will not lie against the secretary unless he fails to act within that 20–day period. In that regard, section 116.160.1 states, in addition to that part of the statute cited in the majority opinion, that

If the general assembly adopts a joint resolution proposing a constitutional amendment or a bill without an official summary statement, which is to be referred to a vote of the people, within 20 days after receipt of the resolution or bill, the secretary of state shall prepare and transmit to the attorney general a summary statement of the measure as the proposed statement. . . .

Under this provision, even if the secretary of state had received the joint resolution immediately upon its final adoption on May 14, the 20–day period would not have run until June 3. In this case, though, whether the secretary of state is or would have been subject to mandamus on May 28, when the resolution was actually received, or 20 days thereafter, or even on June 3, the petition for writ of mandamus is moot because of the inability to meet the May 25th ten-week deadline under section 116.240, which states:

Not later than the tenth Tuesday prior to an election at which a statewide ballot measure is to be voted on, the secretary of state shall send each election authority a certified copy of the legal notice to be published. The legal notice shall include the date and time of the election and a sample ballot.

That brings me to the reason for my dissent. By ordering the secretary of state to proceed with an August 3rd election regardless of the ten-week deadline, the Court effectively renders section 116.240 unenforceable, and I suppose unconstitutional, at least in relation to the governor's power to call special elections. This is the import of the majority's conclusions that "[n]o statute precludes the secretary of state from sending an amended notice to each election authority subsequent to the tenth Tuesday before the election," and "[t]he secretary of state cannot exercise the duties of his office in a manner to frustrate the governor's constitutional authority to set the election date for the submission of this question to the

people." I would hold, instead, that the section 116.240 deadline is a prerequisite to the conduct of this or any other election, subject only to the several statutory exceptions set out in footnote 2 of the majority opinion.

At this point, it is helpful to restate the pertinent part of article XII, section 2(b), of the Missouri Constitution:

> All amendments proposed by the general assembly or by the initiative shall be submitted to the electors for their approval or rejection by official ballot title as may be provided by law ... at the next general election, or at a special election called by the governor prior thereto....

Nothing in this provision even vaguely suggests that the delegation of authority to the governor is not otherwise subject to statutory election procedures. In fact, the use of the phrase "as may be provided by law" is a clear delegation of authority to the general assembly to enact the procedures it deems necessary for the orderly conduct of the elections contemplated in section 2(b), and those procedures include the section 116.240 ten-week deadline at issue here. Thus, in my view, the proper resolution is one that gives effect both to the governor's power to call a special election and the general assembly's concomitant power to enact election procedures. Though in this case the ten-week procedural deadline would preclude an August 3rd election, it would not preclude the governor from calling a special election on some other date after August 3rd but before the general election on a date in November, provided that the ten-week notice period is honored.

Tellingly, even the attorney general concedes that section 116.240 should be given full effect as with all of the other statutory election procedures. In fact, the attorney general's express claim for relief was to secure full compliance with section 116.240 by ordering the secretary of state to give notice of the resolution election by May 25, ten weeks before the August 3rd primary. Indeed, the attorney general's argument, all along, is based on his interpretation of the election laws, not that they do not apply. As the majority concedes, "the focus of the litigation below was that the secretary of state had not yet received from the legislature the original copy of the resolution." In any event, in its brief, the attorney general made clear that he was not challenging the statute:

> Although additional litigation may ensue challenging the constitutionality of the May 25 deadline in section 116.240, that litigation cannot be between these parties—secretary Blunt must abide by all of the statutes and the constitution, and the attorney general will abide by his constitutional duty to defend the secretary and the statutes.

Even now after the May 25 deadline has passed, the attorney general still declines to challenge the statute's validity or application and argues only that the secretary should have met the May 25 deadline (though the majority holds otherwise in denying the writ). Ultimately, and unfortunately, the Court does away with the mandate of section 116.240, although no party has challenged its application or validity.

I also wish to address Judge Benton's position that section 115.125.2 controls. In my view, that section does not provide this Court with the carte blanche authority to change the ballot until six weeks prior to the election. Judge Benton cites only a part of section 115.125.2. That section provides in its entirety:

> Except as provided for in section 115.247 and 115.359 [provisions not applicable here], if the **political subdivision** or **special district** calling for the

election agrees to pay any printing or reprinting costs, a **political subdivision or special district** may, at any time after certification required in subsection 1 of this section, but no later than 5:00 p.m. on the sixth Tuesday before the election, be permitted to make late notification to the election authority pursuant to court order, which, except for good cause shown by the election authority in opposition thereto, shall be freely given upon application by the **political subdivision or special district** to the circuit court of the area of such **subdivision or district. No court shall have the authority to order an individual or issue be placed on the ballot less than six weeks before the date of the election, except as provided in sections 115.361 and 115.379.**

(emphasis added).

The secretary of state makes the plausible argument that the statute must be read as a whole, and when that is done, the last sentence of the statute applies only to elections called by "political subdivisions" and "special districts," not statewide elections as here. However, assuming, as does Judge Benton, that the last sentence of section 115.125.2 applies to all elections, it still provides no authority to place SJR 29 on the August 3rd ballot. I also read section 115.125.2's six-week deadline to be a "drop dead date," but I do not take the position that this six-week deadline is the "real" deadline whereas the ten-week deadline is merely directory but not mandatory, which essentially is Judge Benton's argument. Instead, I would hold that the legislature intended both deadlines to have effect. The ten-week deadline in section 116.240, which is indeed couched in mandatory terms, is the date when the sample ballot and notice must be delivered to each election authority. The specific instances meticulously listed in footnote 2 of the majority opinion are then exceptions to this rule and are obviously designed to address those situations in which the general assembly has determined that the ten-week deadline should be waived. These are the changes that are permitted up to the six-week deadline, again assuming it applies to all election statutes. It simply makes no sense that the ten-week deadline in section 116.240 is merely directory rather than mandatory, because if it were directory only, the general assembly would have no need or reason to enact the several statutory exceptions to the ten-week deadline.

Finally, Judge Benton's summation requires an additional response. First, though it is true that "the governor called a special election over ten weeks before the election," the call for election was not made within the statutory timeframe allowed for the secretary of state to act. Second, though it is true that "all four statewide offices involved agree that all required acts will be completed more than six weeks before the election," the practicality of doing so does not do away with the constitutionally authorized statutory ten-week deadline. Third, though it is true that "local election authorities had notice ten weeks before the election," that notice was not the statutorily required notice because it did not include a ballot title and sample ballot, which are the very reasons for the notice.

I would sum up the application of section 115.125.2 in this way: Section 115.125.2 does not provide affirmative authority to change a ballot up to six weeks before an election, it is only a deadline that must be met if there is an independent basis to change the ballot. For instance, in this case, if the secretary of state had received SJR 29 on May 1, well within the May 25 ten-week deadline, but for some reason failed to include the measure on the notice of election and sample ballot for

August 3, then, certainly, this Court could order the measure to be placed on the ballot after May 25, but before the six-week deadline of section 115.125.2. That situation does not present itself here.

For these reasons, I am unable to join the Court's opinion, and I agree only that the sole relief requested, a writ of mandamus, should be denied.